# BURDICK *v.* UNITED STATES.

## ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 471.   Argued December 16, 1914.—Decided January 25, 1915.

Acceptance, as well as delivery, of a pardon is essential to its validity; if rejected by the person to whom it is tendered the court has no power to force it on him. *United States* v. *Wilson,* 7 Pet. 150.

*Quære* whether the President of the United States may exercise the pardoning power before conviction.

A witness may refuse to testify on the ground that his testimony may have an incriminating effect, notwithstanding the President offers, and he refuses, a pardon for any offense connected with the matters in regard to which he is asked to testify.

There are substantial differences between legislative immunity and a pardon; the latter carries an imputation of guilt and acceptance of a confession of it, while the former is non-committal and tantamount to silence of the witness.

There is a distinction between amnesty and pardon; the former overlooks the offense and is usually addressed to crimes against the sovereignty of the State and political offenses, the latter remits punishment and condones infractions of the peace of the State.

211 Fed. Rep. 492, reversed.

THE facts, which involve the effect of a pardon of the President of the United States tendered to one who has not been convicted of a crime nor admitted the commission thereof, and also the necessity of acceptance of a pardon in order to make it effective, are stated in the opinion.

*Mr. Henry A. Wise,* with whom *Mr. Henry W. Sackett* was on the brief, for plaintiff in error:

The proceeding before the grand jury was a "criminal case" within the meaning of the Fifth Amendment. *Counselman* v. *Hitchcock,* 142 U. S. 547.

Plaintiff in error was privileged under the Fifth Amend-

ment to decline to answer the questions upon the ground that his answers thereto might tend to criminate him. 1 Burr's Trial, 244, Coombs; *Counselman* v. *Hitchcock*, 142 U. S. 564; *Sanderson's Case*, 3 Cranch, 638.

The refusal of a witness to answer questions upon the ground that his answers may tend to criminate him does not constitute either an admission or proof of his guilt of any offense.    30 Am. & Eng. Ency., p. 1170; *Rose* v. *Blakemore*, 21 E. C. L. Ryan & Moody, 382, 774; *Phelin* v. *Kinderline*, 20 Pa. St. 354; *State* v. *Bailey*, 54 Iowa, 414; *Dorendinger* v. *Tschechtelin*, 12 Daly (N. Y.), 34; Greenleaf on Evidence, 16th ed., § 469d; Wigmore on Evidence, § 2272; Act of March 16, 1878, 20 Stat. 30; *Wilson* v. *United States*, 149 U. S. 60; *Fitzpatrick* v. *United States*, 178 U. S. 304, 315; *Boyle* v. *Smithman*, 146 Pa. St. 255; *Beach* v. *United States*, 46 Fed. Rep. 754.

The President was without power to issue any pardon to plaintiff in error; and consequently the warrant tendered is null, void and of no effect.    Art. II, § 2, Const. U. S.; *Martin* v. *Hunter*, 1 Wheat. 304; Cooley's Const. Lim., p. 11; *Ex parte Wells*, 18 How. 307; *Ex parte Garland*, 4 Wall. 333; 20 Ops. Atty. Gen'l 330; 24 Am. & Eng. Ency., pp. 575–6; 2 Hawkins P. C., Ch. 37, § 9, p. 543; *In re Nevitt*, 117 Fed. Rep. 448; 11 Ops. Atty. Gen'l 227; *Howard's Case*, Sir T. Raymond, 13; 83 Eng. Rep. (Full Reprint), 7; *United States* v. *Klein*, 13 Wall. 128; *Armstrong's Foundry*, 6 Wall. 766; *Carlisle* v. *United States*, 16 Wall. 147; *Lapeyre* v. *United States*, 17 Wall. 191; *Osborn* v. *United States*, 91 U. S. 474; *Wallach* v. *Van Riswick*, 92 U. S. 202; *United States* v. *Padelford*, 9 Wall. 531; *Armstrong* v. *United States*, 13 Wall. 155; *Pargoud* v. *United States*, 13 Wall. 157.

Plaintiff in error having refused to accept the tendered pardon, the same is of no effect.    *Wilson* v. *United States*, 7 Pet. 150; *Commonwealth* v. *Lockwood*, 109 Massachusetts, 323; Cooley, Const. Law, 3d ed., p. 115.

The decision of the court below is equivalent to the conviction of plaintiff in error of an offense against the United States without trial by jury, and consequently in violation of his rights under the Constitution of the United States. See Fifth and Sixth Amendments, Const. U. S.; 24 Am. & Eng. Ency. 579; 11 Ops. Atty. Gen'l 227; *Dominick* v. *Bowdoin,* 44 Georgia, 357; *Manlove* v. *State,* 153 Indiana, 80; *Commonwealth* v. *Lockwood,* 109 Massachusetts, 323; *People* v. *Marsh,* 125 Michigan, 410; *United States* v. *Armour,* 142 Fed. Rep. 808.

The tendered pardon is not an equivalent of the constitutional privilege of plaintiffs in error. *Counselman* v. *Hitchcock,* 142 U. S. 564; *Brown* v. *Walker,* 161 U. S. 591; Cooley's Const. Lim., pp. 5, 365.

The interpretation of the language of the Constitution conferring the pardoning power upon the President, "and he shall have power to grant reprieves and pardons for offenses against the United States except in cases of impeachment," (Art. II, § 2, subd. 1) contended for by the United States stretches the actual language of the Constitution in that it makes the word "offenses" connote conjectural or purely hypothetical offenses in addition to ascertained events. Assuming for the sake of argument that this construction is permissible, upon a mere examination of the language, then there is presented a case in which there is a choice between two permissible constructions and in such a case the court must choose the one which is most in harmony with the Constitution taken as a whole and with the spirit of our institutions. *Gibbons* v. *Ogden,* 9 Wheat. 1, 188; *Legal Tender Cases,* 12 Wall. 457, 531–532; *In re Griffin,* 17 Am. L. R. 358.

The construction of the words conferring the pardoning power that is contended for by the United States would tend to destroy some of the most essential safeguards of free government. It would pervert the grand jury, which in its origin was an institution which stood

as a barrier against persecution by the crown into an instrument of inquisition that might be used by the executive department for the purpose of throttling the free and wholesome criticism of the acts of public officials. It would tend to destroy to a dangerous degree the separation of powers between the executive and the judicial branches of the government and in practical effect would arm the executive with summary powers which ought to be possessed only by the judicial branch.  It would inevitably create the possibility of putting into effect a system of censorship of news concerning the acts of public officials and tend to the creation of a secret and powerful bureaucracy.  *Ex parte Bain*, 121 U. S. 1, 10–11; *Kilbourn v. Thompson*, 103 U. S. 168, 190; United States Constitution, Art. III, § 1; Art. II, § 1; Art. I, § 1; Fifth Amendment.

*The Solicitor General* for the United States:

The President has the power to pardon a person for an offense of which he has not been convicted.  It was so in England.  3 Coke's Inst. 233, c. 105, Of Pardons; 14 Blackstone, c. 26, subd. IV, 4, and see c. 28; 6 Halsbury's Laws of England, p. 404.

In this country from the very first, Presidents have exercised not only the power to pardon in specific cases before conviction, but even to grant general amnesties.  20 Ops. Atty. Gen'l 339.  And see *Ex parte Garland*, 4 Wall. 333; *Brown v. Walker*, 161 U. S. 591.

In the constitutions of some of the States the power of the governor to grant pardons is expressly limited by the words "after conviction," but in the States in which this limitation is not contained in the constitutions the governor may pardon before conviction.  *Dominick v. Bowdoin*, 44 Georgia, 357; *Grubb v. Bullock*, 44 Georgia, 379; *Commonwealth v. Bush*, 2 Duv. (Ky.) 264; *State v. Woolery*, 29 Missouri, 300.

A pardon may be granted for an. offense which has neither been admitted nor proved. It is true that a pardon cannot be granted as a license for future misdoing, but the pardons involved in the cases at bar do not relate to future offenses, but to offenses which the plaintiffs in error have committed or may have committed, or taken part in.

A person may be pardoned for an offense which has not been proved. An acknowledgment by the person pardoned that his answer will tend to incriminate him is basis enough for granting a pardon, without any other proof of the offense or of his connection with it. This is the basis of the immunity statutes.

A pardon may be granted for the purpose of affording to a witness immunity from prosecution. The exercise of the pardoning power of the President for this purpose does not amount to a usurpation of legislative functions even if it be true that it is within the powers of Congress to enact laws securing to witnesses immunity from prosecution in lieu of the constitutional prohibition against compelling incriminating testimony. See *Brown* v. *Walker,* 161 U. S. 591.

The exercise of this power by Congress, however, can have no effect in limiting the constitutional power of the President to grant pardons. The President's power of pardon "is not subject to legislation," and "Congress can neither limit the effect of his pardon nor exclude from its exercise any class of offenders." *United States* v. *Klein,* 13 Wall. 128, 141. It cannot be interrupted, abridged, or limited by any legislative enactment. *The Laura,* 114 U. S. 411, 414; *Ex parte Garland,* 4 Wall. 333, 380.

The immunity afforded by the pardons is as broad as the protection afforded by the constitutional provision against compelling a person to be a witness against himself. *Counselman* v. *Hitchcock,* 142 U. S. 547, distinguished. And see *Brown* v. *Walker,* 161 U. S. 591; *Int.*

*Com. Comm.* v. *Baird,* 194 U. S. 25; *Hale* v. *Henkel,* 201 U. S. 43; *Nelson* v. *United States,* 201 U. S. 92.

No formal acceptance is necessary to give effect to the pardons. *United States* v. *Wilson,* 7 Pet. 150, has no application here, and see *In re Callicot,* 8 Blatchf. 89, 96.

Although a court takes no notice of a pardon unless it is pleaded or in some way claimed *coram judice* by the person pardoned, *United States* v. *Wilson,* 7 Pet. 150, and the plaintiffs in error might refuse the benefit of their pardons should they be prosecuted for the offenses which are covered by the pardons, that does not affect their validity.

The pardons have been executed, formally tendered to plaintiffs in error, have been filed with the clerk of the court for the jurisdiction in which the testimony is required, and remain at the disposal of plaintiffs in error. They have passed out of the control of the President and of the executive department of the Government with the intention that they shall pass to the plaintiffs in error, so that there has been as complete a delivery as it is possible to make, and if they are not irrevocable now they would become so at the very instant that the required testimony is given.

It is the object of the constitutional privilege to protect the witness from the danger of prosecution for a past offense which his evidence may disclose or to which his evidence may give a clue. But, since that danger has been completely removed by the pardons of which the plaintiffs may avail themselves at any time after the moment of testifying, the constitutional privilege cannot be invoked by them, for there is nothing to which it can apply—no danger against which its protecting shield is necessary.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Error to review a judgment for contempt against Burdick upon presentment of the Federal grand jury for

refusing to answer certain questions put to him in an investigation then pending before the grand jury into alleged custom frauds in violation of §§ 37 and 39 of the Criminal Code of the United States.

Burdick first appeared before the grand jury and refused to answer questions as to the directions he gave and the sources of his information concerning certain articles in the New York Tribune regarding the frauds under investigation. He is the City Editor of that paper. He declined to answer, claiming upon his oath, that his answers might tend to criminate him. Thereupon he was remanded to appear at a later day and upon so appearing he was handed a pardon which he was told had been obtained for him upon the strength of his testimony before the other grand jury. The following is a copy of it:

"Woodrow Wilson, President of the United States of America, to all to whom these presents shall come, Greeting:

"Whereas George Burdick, an editor of the New York Tribune, has declined to testify before a Federal Grand Jury now in session in the Southern District of New York, in a proceeding entitled 'United States *v.* John Doe and Richard Roe,' as to the sources of the information which he had in the New York Tribune office, or in his possession, or under his control at the time he sent Henry D. Kingsbury, a reporter on the said New York Tribune, to write an article which appeared in the said New York Tribune in its issue of December thirty first, 1913, headed 'Glove Makers' Gems may be Customs Size,' on the ground that it would tend to incriminate him to answer the questions; and,

"Whereas, the United States Attorney for the Southern District of New York desires to use the said George Burdick as a witness before the said Grand Jury in the said proceeding for the purpose of determining whether any employé of the Treasury Department at the Custom

House, New York City, has been betraying information that came to such person in an official capacity; and,

"Whereas, it is believed that the said George Burdick will again refuse to testify in the said proceeding on the ground that his testimony might tend to incriminate himself;

"Now, Therefore, be it Known, that I, Woodrow Wilson, President of the United States of America, in consideration of the premises, divers other good and sufficient reasons me thereunto moving, do hereby grant unto the said George Burdick a full and unconditional pardon for all offenses against the United States which he, the said George Burdick, has committed or may have committed, or taken part in, in connection with the securing, writing about, or assisting in the publication of the information so incorporated in the aforementioned article, and in connection with any other article, matter or thing, concerning which he may be interrogated in the said grand jury proceeding, thereby absolving him from the consequences of every such criminal act.

"In testimony whereof, I have hereunto signed my name and caused the seal of the Department of Justice to be affixed. Done at the City of Washington this fourteenth day of February, in the year of our Lord One Thousand Nine Hundred and Fourteen, and of the Independence of the United States the One Hundred and Thirty-eighth."

He declined to accept the pardon or answer questions as to the sources of his information, or whether he furnished certain reporters information, giving the reason, as before, that the answers might tend to criminate him. He was presented by the grand jury to the District Court for contempt and adjudged guilty thereof and to pay a fine of $500, with leave, however, to purge himself by testifying fully as to the sources of the information sought of him, "and in event of his refusal or failure to so answer, a

commitment may issue in addition until he shall so comply," the court deciding that the President has power to pardon for a crime of which the individual has not been convicted and which he does not admit and that acceptance is not necessary to toll the privilege against incrimination.

Burdick again appeared before the grand jury, again was questioned as before, again refused to accept the pardon and again refused to answer upon the same grounds as before. A final order of commitment was then made and entered and he was committed to the custody of the United States Marshal until he should purge himself of contempt or until the further order of the court. This writ of error was then allowed.

The question in the case is the effect of the unaccepted pardon. The Solicitor General in his discussion of the question, following the division of the District Court, contends (1) that the President has power to pardon an offense before admission or conviction of it, and (2) the acceptance of the pardon is not necessary to its complete exculpating effect. The conclusion is hence deduced that the pardon removed from Burdick all danger of accusation or conviction of crime and that, therefore, the answers to the questions put to him could not tend to or accomplish his incrimination.

Plaintiff in error counters the contention and conclusion with directly opposing ones and makes other contentions which attack the sufficiency of the pardon as immunity and the power of the President to grant a pardon for an offense not precedently established nor confessed nor defined.

The discussion of counsel is as broad as their contentions. Our consideration may be more limited. In our view of the case it is not material to decide whether the pardoning power may be exercised before conviction. We may, however, refer to some aspects of the contentions of plaintiff in error, although the case may be brought to

the narrow question, Is the acceptance of a pardon necessary? We are relieved from much discussion of it by *United States* v. *Wilson*, 7 Peters, 150. Indeed, all of the principles upon which its solution depends were there considered and the facts of the case gave them a peculiar and interesting application.

There were a number of indictments against Wilson and one Porter, some of which were for obstructing the mail and others for robbing the mail and putting the life of the carrier in jeopardy. They were convicted on one of the latter indictments, sentenced to death, and Porter was executed in pursuance of the sentence. President Jackson pardoned Wilson, the pardon reciting that it was for the crime for which he had been sentenced to suffer death, remitting such penalty with the express stipulation that the pardon should not extend to any judgment which might be had or obtained against him in any other case or cases then pending before the court for other offenses wherewith he might stand charged.

To another of the indictments Wilson withdrew his plea of not guilty and pleaded guilty. Upon being arraigned for sentence the court suggested the propriety of inquiring as to the effect of the pardon, "although alleged to relate to a conviction on another indictment." Wilson was asked if he wished to avail himself of the pardon, to which he answered in person that (7 Pet., p. 154) "he had nothing to say, and that he did not wish in any manner to avail himself, in order to avoid sentence in this particular case, of the pardon referred to."

The judges were opposed in opinion and certified to this court for decision two propositions which were argued by the district attorney of the United States, with one only of which we are concerned. It was as follows (p. 154): "2. That the prisoner can, under this conviction, derive no advantage from the pardon, without bringing the same judicially before the court by plea, motion or otherwise."

There was no appearance for Wilson. Attorney General Taney (afterwards Chief Justice of this court) argued the case on behalf of the United States. The burden of his argument was that a pardon, to be effective, must be accepted. The proposition was necessary to be established as his contention was that a plea of the pardon was necessary to arrest the sentence upon Wilson. And he said, speaking of the pardon (p. 156), "It is a grant to him [Wilson]; it is his property; and he may accept it or not as he pleases," and, further, "It is insisted that unless he pleads it, or in some way claims its benefit, thereby denoting his acceptance of the proffered grace, the court cannot notice it, nor allow it to prevent them from passing sentence. The whole current of authority establishes this principle." The authorities were cited and it was declared that "the necessity of pleading it, or claiming it in some other manner, grows out of the nature of the grant. He must accept it."

There can be no doubt, therefore, of the contention of the Attorney General and we have quoted it in order to estimate accurately the response of the court to it. The response was complete and considered the contention in two aspects, (1) a pardon as the act of the President, the official act under the Constitution; and (2) the attitude and right of the person to whom it is tendered. Of the former it was said (p. 160) that the power had been "exercised from time immemorial by the executive of that nation (England) whose language is our language, and to whose judicial institutions ours bear a close resemblance; we adopt their principles respecting the operation and effect of a pardon, and look into their books for the rules prescribing the manner in which it is to be used by the person who would avail himself of it." From that source of authority and principle the court deduced and declared this conclusion: "A pardon is an act of grace, proceeding from the power entrusted with the execution of

the laws, which exempts the individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed. It is the *private*, [italics ours] though official act of the executive magistrate, delivered to the individual for whose benefit it is intended." In emphasis of the official act and its functional deficiency if not accepted by him to whom it is tendered, it was said, "A private deed, not communicated to him, whatever may be its character, whether a pardon or release, is totally unknown and cannot be acted on."

Turning then to the other side, that is, the effect of a pardon on him to whom it is offered and completing its description and expressing the condition of its consummation, this was said: "A pardon is a deed, to the validity of which delivery is essential, and delivery is not complete without acceptance. It may then be rejected by the person to whom it is tendered; and if it be rejected, we have discovered no power in a court to force it on him."

That a pardon by its mere issue has automatic effect resistless by him to whom it is tendered, forcing upon him by mere executive power whatever consequences it may have or however he may regard it, which seems to be the contention of the Government in the case at bar, was rejected by the court with particularity and emphasis. The decision is unmistakable. A pardon was denominated as the "private" act, the "private deed," of the executive magistrate, and the denomination was advisedly selected to mark the incompleteness of the act or deed without its acceptance.

Indeed, the grace of a pardon, though good its intention, may be only in pretense or seeming; in pretense, as having purpose not moving from the individual to whom it is offered; in seeming, as involving consequences of even greater disgrace than those from which it purports to relieve. Circumstances may be made to bring innocence under the penalties of the law. If so brought, escape by

confession of guilt implied in the acceptance of a pardon may be rejected,—preferring to be the victim of the law rather than its acknowledged transgressor—preferring death even to such certain infamy. This, at least theoretically, is a right and a right is often best tested in its extreme. "It may be supposed," the court said in *United States* v. *Wilson* (p. 161), "that no being condemned to death would reject a pardon; but the rule must be the same in capital cases and in misdemeanors. A pardon may be conditional; and the condition may be more objectionable than the punishment inflicted by the judgment."

The case would seem to need no further comment and we have quoted from it not only for its authority but for its argument. It demonstrates by both the necessity of the acceptance of a pardon to its legal efficacy, and the court did not hesitate in decision, as we have seen, whatever the alternative of acceptance—whether it be death or lesser penalty. The contrast shows the right of the individual against the exercise of executive power not solicited by him nor accepted by him.

The principles declared in *Wilson* v. *United States* have endured for years; no case has reversed or modified them. In *Ex parte William Wells,* 18 How. 307, 310, this court said, "It was with the fullest knowledge of the law upon the subject of pardons, and the philosophy of government in its bearing upon the Constitution, when this court instructed Chief Justice Marshall" to declare the doctrine of that case. And in *Commonwealth* v. *Lockwood* it was said by Mr. Justice Gray, speaking for the Supreme Judicial Court of Massachusetts, he then being a member of that court, "it is within the election of a defendant whether he will avail himself of a pardon from the executive (be the pardon absolute or conditional)." 109 Massachusetts, 323, 339. The whole discussion of the learned justice will repay a reference. He cites and re-

views the cases with the same accurate and masterful consideration that distinguished all of his judicial work, and the proposition declared was one of the conclusions deduced.

*United States* v. *Wilson,* however, is attempted to be removed as authority by the contention that it dealt with conditional pardons and that, besides, a witness cannot apprehend from his testimony a conviction of guilt, which conviction he himself has the power to avert, or be heard to say that the testimony can be used adversely to him, when he himself has the power to prevent it by accepting the immunity offered him. In support of the contentions there is an intimation of analogy between pardon and amnesty, cases are cited, and certain statutes of the United States are adduced whereby immunity was imposed in certain instances and under its unsolicited protection testimony has been exacted against the claim of privilege asserted by witnesses. There is plausibility in the contentions; it disappears upon reflection. Let us consider the contentions in their order:

(1) To hold that the principle of *United States* v. *Wilson* was expressed only as to conditional pardons would be to assert that the language and illustrations which were used to emphasize the principle announced were meant only to destroy it. Besides, the pardon passed on was not conditional. It was limited in that—and only in that—it was confined to the crime for which the defendant had been convicted and for which he had been sentenced to suffer death. This was its emphasis and distinction. Other charges were pending against him, and it was expressed that the pardon should not extend to them. But such would have been its effect without expression. And we may say that it had more precision than the pardon in the pending case. Wilson had been indicted for a specific statutory crime, convicted and sentenced to suffer death. It was to the crime so defined and established that the

pardon was directed. In the case at bar nothing is defined. There is no identity of the offenses pardoned, and no other clue to ascertain them but the information incorporated in an article in a newspaper. And not that entirely, for absolution is declared for whatever crimes may have been committed or taken part in "in connection with any other article, matter or thing concerning which he [Burdick] may be interrogated."

It is hence contended by Burdick that the pardon is illegal for the absence of specification, not reciting the offenses upon which it is intended to operate; worthless, therefore, as immunity. To support the contention cases are cited. It is asserted, besides, that the pardon is void as being outside of the power of the President under the Constitution of the United States, because it was issued before accusation, or conviction or admission of an offense. This, it is insisted, is precluded by the constitutional provision which gives power only "to grant reprieves and pardons for offenses against the United States," and it is argued, in effect, that not in the imagination or purpose of executive magistracy can an "offense against the United States" be established, but only by the confession of the offending individual or the judgment of the judicial tribunals. We do not dwell further on the attack. We prefer to place the case on the ground we have stated.

(2) May plaintiff in error, having the means of immunity at hand, that is, the pardon of the President, refuse to testify on the ground that his testimony may have an incriminating effect? A superficial consideration might dictate a negative answer but the answer would confound rights which are distinct and independent.

It is to be borne in mind that the power of the President under the Constitution to grant pardons and the right of a witness must be kept in accommodation. Both have sanction in the Constitution, and it should, therefore, be the anxiety of the law to preserve both,—to leave to each

its proper place. In this as in other conflicts between
personal rights and the powers of government, technical—
even nice—distinctions are proper to be regarded. Grant-
ing then that the pardon was legally issued and was suffi-
cient for immunity, it was Burdick's right to refuse it, as
we have seen, and it, therefore, not becoming effective, his
right under the Constitution to decline to testify remained
to be asserted; and the reasons for his action were personal.
It is true we have said (*Brown* v. *Walker*, 161 U. S. 591,
605) that the law regards only mere penal consequences
and not "the personal disgrace or opprobrium attaching to
the exposure" of crime, but certainly such consequence
may influence the assertion or relinquishment of a right.
This consideration is not out of place in the case at bar.
If it be objected that the sensitiveness of Burdick was
extreme because his refusal to answer was itself an impli-
cation of crime, we answer, not necessarily in fact, not at
all in theory of law. It supposed only a possibility of a
charge of crime and interposed protection against the
charge, and, reaching beyond it, against furnishing what
might be urged or used as evidence to support it.

This brings us to the differences between legislative
immunity and a pardon. They are substantial. The
latter carries an imputation of guilt; acceptance a con-
fession of it. The former has no such imputation or
confession. It is tantamount to the silence of the witness.
It is non-committal. It is the unobtrusive act of the law
giving protection against a sinister use of his testimony,
not like a pardon requiring him to confess his guilt in
order to avoid a conviction of it.

It is of little service to assert or deny an analogy between
amnesty and pardon. Mr. Justice Field, in *Knote* v.
*United States*, 95 U. S. 149, 153, said that "the distinction
between them is one rather of philological interest than of
legal importance." This is so as to their ultimate effect,
but there are incidental differences of importance. They

are of different character and have different purposes. The one overlooks offense; the other remits punishment. The first is usually addressed to crimes against the sovereignty of the State, to political offenses, forgiveness being deemed more expedient for the public welfare than prosecution and punishment. The second condones infractions of the peace of the State. Amnesty is usually general, addressed to classes or even communities, a legislative act, or under legislation, constitutional or statutory, the act of the supreme magistrate. There may or may not be distinct acts of acceptance. If other rights are dependent upon it and are asserted there is affirmative evidence of acceptance. Examples are afforded in *United States* v. *Klein*, 13 Wall. 128; *Armstrong's Foundry*, 6 Wall. 766; *Carlisle* v. *United States*, 16 Wall. 147. See also *Knote* v. *United States, supra.* If there be no other rights, its only purpose is to stay the movement of the law. Its function is exercised when it overlooks the offense and the offender, leaving both in oblivion.

> *Judgment reversed with directions to dismiss the proceedings in contempt and discharge Burdick from custody.*

MR. JUSTICE MCREYNOLDS took no part in the consideration and decision of this case.