## DOWNEY v. SCHMIDT.

District Court, N. D. Texas, Dallas Division.
June 7, 1933.

W. B. Harrell and Russell Allen, both of Dallas, Tex., for petitioner.

Hughes & Monroe, of Dallas, Tex., for respondent.

ATWELL, District Judge.

Nicholas J. Downey, a resident citizen of the state of Illinois, complains of the respondent, Schmidt, and alleges that on the 29th of November, 1930, a criminal complaint was filed against J. T. De Grazier, in the city of Chicago, charging the said De Grazier with having uttered to the Congress Hotel Company, with the intent to cheat and defraud that company, a check for the sum of $559.26, for which he obtained that amount in money and other property; that at the time of delivering said check to the company he knew that he did not have any account with

the bank upon which the check was drawn; that this was contrary to the statutes of the state of Illinois, and in fact a crime; that the Governor of the state of Illinois made a requisition to the Governor of the state of Texas, having attached thereto proper exhibits showing the commission of a crime, for the said De Grazier, and he was arrested at Dallas in said state, and on the 23d of June, 1931, the Governor of Texas honored such requisition and issued his executive warrant for the said De Grazier. The prisoner sued out a writ of habeas corpus in the criminal district court of Dallas county, Tex., alleging an illegal restraint. The judge of that court remanded him to the custody of the agent; the order being as follows: "Relator remanded to the custody of John T. Carton, agent in governor's warrant of the State of Texas, issued June twenty-third, 1931, to be delivered to the state of Illinois to answer charge set out in said warrant. Defendant excepts and gives notice of appeal to the court of criminal appeals, at Austin, Texas." The judge also found, in a formal order entered upon the same date, that De Grazier was a fugitive from the state of Illinois, and that upon a legal request for his extradition the Governor of the state of Texas had issued his warrant.

The Court of Criminal Appeals of Texas [Ex parte De Grazier, 59 S.W.(2d) 139] to which the cause was taken, affirmed the order of the district judge in the following language: "This cause came on to be heard on the transcript of the record of the court below, and the same being inspected, because it is the opinion of this court that there was no error in the judgment, it is ordered, adjudged, and decreed by the court that the judgment be in all things confirmed, and that the relator pay all costs in this behalf expended, and that this decision be certified below for observance." This latter judgment was entered on the 28th of April, 1933, and on May 29th the sheriff took him into custody, and on May 31st the petitioner appeared as the messenger of the state of Illinois to receive De Grazier and transport him to that state to be dealt with according to law. The respondent, who was holding De Grazier, refused to deliver him, and the petitioner came into this court asking for a mandatory injunction to require the sheriff to turn the prisoner over to him. On June the 5th the court issued a show cause order to the respondent.

The respondent answers that on June 3, 1933, he had received a telephone call from the Governor of Texas not to recognize the extradition warrant that had been issued by his predecessor, Governor Sterling, and that the same had been suspended subject to a second hearing which was to be held on June the 6th. Thereafter, on June the 6th, he had received a telegram from the Governor of Texas, advising that he had revoked the warrant on the ground that it was an effort to collect "a civil debt." Attached to the response was a photostatic copy of the order reading as follows: "Honorable W. W. Heath, Secretary of State, State Capitol, Austin, Texas. Dear Sir: I have revoked the writ of extradition granted by R. F. Sterling, Governor, on June twenty-third, 1931, for the return of Joe T. De Grazier upon requisition from the Governor of Illinois issued the twentieth day of June, 1931. My reason for such action is that the prosecution of the defendant in this case was for the sole purpose of collecting a civil debt. Very truly yours, Miriam A. Ferguson, Governor of Texas."

The allegations of both the petitioner and the respondent are supported by record testimony.

To the answer of the sheriff the petitioner filed a motion to strike.

The petitioner claims that a warrant on an application for extradition having once been delivered, like a pardon or a deed, may not be revoked without some judicial action. The respondent contends that a valid revocation may be had at any time before the prisoner is removed from the state.

Section 2 of article 4 of the National Constitution provides that "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime."

The Revised Statutes of the United States (§ 5278 [18 USCA § 662]) provide that it shall be the duty of the executive authority of a state to which a person had fled to cause him to be arrested and secured and to deliver him to an agent appointed by the demanding state.

■■ The executive of the asylum state is charged with the responsibility of determining, in some legal mode, whether the person is a fugitive from the justice of the demanding state. Of this he may exact competent proof. He may not hold insufficient the pro-

cedure of the demanding state, provided that procedure complies with the fundamental guaranties of the National Constitution as to life, liberty, and property. In Kentucky v. Dennison, 24 How. 66, 16 L. Ed. 717, it was held that the words, "treason, felony, or other crime," in the section above mentioned include every offense from the highest to the lowest known to the law of the state from which the accused had fled, including misdemeanor. Chief Justice Taney, saying that, "Looking, therefore, to the words of the Constitution—to the obvious policy and necessity of this provision to preserve harmony between States * * * and law within their respective borders * * * this compact engrafted in the Constitution included, and was intended to include, every offence made punishable by the law of the State in which it was committed." In re Reggel, 114 U. S. 642, 5 S. Ct. 1148, 29 L. Ed. 250; Ex parte Brown (D. C.) 28 F. 653.

The authorities seem to hold that the duty of the Governor, when a requisition is presented, is ministerial and not discretionary, and is described as imperative, although, in the absence of a state statute, there is no power to compel the executive to act. 25 C. J. 265. He is to settle two questions, viz., Is the person demanded substantially charged with a crime against the laws of the state from whose justice it is alleged he has fled? and Is he a fugitive from that state? 25 C. J. 265.

Both of these matters were passed on by Governor Sterling, and he concluded that the requisition of Illinois should be honored. Can his successor in office revoke the warrant he issued?

Could he himself have revoked his order?

The lapse of time between the granting of the warrant and its attempted revocation does not complicate the question because the fugitive has remained during that entire time within the state of Texas, and during that entire time he has been before the Texas courts asking to be liberated.

The warrant operated on him, but was not delivered to him.

The Minnesota Supreme Court, in the case of State v. Toole, 69 Minn. 104, 72 N. W. 53, 38 L. R. A. 224, 65 Am. St. Rep. 553, held that the power to revoke existed. It would seem that the chief executive of a state should have the same right to undo an act which he considered erroneous as does any other official or court, provided vested rights

have not intervened. If a Governor discovers that a warrant which has been issued was granted improvidently, the righteous course would seem to be to recall it, to revoke it, provided the person upon whom it operated was still within his domain. It is a license to take and not a contract. It is a privilege to move within the state, and before the border is reached the privilege may be withdrawn.

A pardon is not effective unless accepted, and there is no power to compel such acceptance. Burdick v. U. S., 236 U. S. 79, 35 S. Ct. 267, 59 L. Ed. 476.

There is another reason why the relief sought here cannot be granted. The state district judge, it seems to me, has ample power to make orders in the premises. He committed the fugitive. His action was affirmed by the Court of Criminal Appeals with directions to "observe his order." The sheriff may not liberate De Grazier without that court's permission. If the Governor of Texas has acted improvidently, then the legal machinery for the determination of that question is in that court.

While the national courts have frequently been appealed to for the liberation of citizens held under extradition warrants, and while an extradition agent, in the act of transferring a fugitive, is under the protection of a federal statute, it seems to me that the application which is made here, to enjoin the sheriff from refusing to hand over De Grazier to the Illinois agent, is a request that this court should refuse.