## LUPO v. ZERBST, Warden, et al. *
### No. 8471.

Circuit Court of Appeals, Fifth Circuit.

Oct. 19, 1937.

*Rehearing denied Dec. 8, 1937.

Clint W. Hager and Eugene L. Tiller, both of Atlanta, Ga., for appellant.

Bates Booth, Sp. Asst. to Atty. Gen., Gordon Dean, Sp. Executive Asst. to Atty. Gen., and Lawrence S. Camp, U. S. Atty., and Harvey H. Tisinger and Hiram T. Nichols, Asst. U. S. Attys., all of Atlanta, Ga., for appellee.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

Appellant was convicted of the crime of counterfeiting, in the United States District Court for the Southern District of New York, on February 19, 1910, and sentenced to serve a term of 30 years in the federal penitentiary at Atlanta. On February 21, 1910, he entered upon his sentence and served time uninterruptedly until June 30, 1920, on which date he was released on parole.

On October 29, 1921, the President granted him what is styled in the document itself a conditional commutation of sentence. This instrument recites that whereas it was made to appear that it was highly important for business reasons that appellant return to Italy for a brief period, which he could not do under the Parole Act (18 U.S.C.A. §§ 714–723), and for other reasons appearing, the sentence of appellant was commuted to expire at once on condition that he be law-abiding and not connected with any unlawful undertaking during the period of his present sentence; and, on the further condition, that if he did violate the conditions of the commutation, of which fact the President himself should be the sole judge, the commutation should be null and void and of no effect, and appellant might, by direction of the President, be apprehended and returned to the penitentiary and required to complete service of his sentence. The following month appellant went to Italy, returning in May, 1922. In order to get back into the United States, he produced his conditional commutation to the Board of Special Inquiry at Ellis Island. Nevertheless, he was ordered deported, but, upon appeal to the Secretary of Labor, the Board's action was reversed on the ground that the con-

tinuance of his commutation contemplated that he remain in this country in order that, in the event of a breach of its condition, he could be remanded to custody.

On July 10, 1936, the President revoked said commutation because of appellant's association with persons of evil character, of his having been arrested and indicted on various charges, and of his having been engaged in racketeering and other unlawful enterprises. The order of revocation further provides as follows:

"Whereas the said Ignatio Lupo has violated the terms and conditions of his conditional commutation, and pursuant to its terms and conditions, the commutation has become void and of no force and effect and the said Ignatio Lupo has become liable to apprehension and return to the United States Penitentiary at Atlanta, Georgia, to complete the service of the term of his original sentence:

"Now, therefore, by the authority vested in me as President of the United States, you, the said United States Marshal for the Southern District of New York, are hereby commanded forthwith to apprehend the said Ignatio Lupo, if found within the jurisdiction of the United States, and deliver him, together with this warrant, to the Warden of the United States Penitentiary at Atlanta, Georgia, there to serve the remainder of his said term of imprisonment, to-wit, such time as, added to the time already served by the said Ignatio Lupo under his sentence, will equal the term of his original sentence.

"And you, the said Warden, are hereby directed to receive the said Ignatio Lupo and him safely keep confined in said penitentiary during the remainder of his said term of imprisonment as aforesaid."

Pursuant to the aforesaid revocation, appellant was arrested by the United States Marshal for the Southern District of New York and transported to the Atlanta federal prison, where he was received by the warden and has since been confined. Immediately thereafter he sought to challenge the validity of his imprisonment, and applied for a writ of habeas corpus, which was granted. Upon the hearing no attack was made upon the indictment, trial, or sentence, but all the issues raised concerned the validity and regularity of the procedure in connection with the conditional commutation of sentence and the revocation of the same. The District Judge resolved the issues in favor of the appellee,

ordered the writ of habeas corpus discharged, and directed that the appellant be remanded to custody for execution of the remainder of his sentence. From this judgment appellant has brought the case to this court for review by appeal. He insists that the President was authorized to grant the commutation of sentence, but was without power or legal authority to engraft conditions thereon. Therefore, he says, the conditions being void and the commutation itself valid, the petitioner was unconditionally released on October 29, 1921, the date of said commutation. In the event the court should find that the alleged conditional commutation was lawful, the petitioner insists that he continued to serve his sentence under the restraint of said parole and said conditional commutation, and that he had fully completed the service of his minimum sentence on April 13, 1930, which was prior to the time that his parole and conditional commutation were sought to be revoked.

We are unable to concur in the contentions of appellant. In Re Wells, 18 How.(59 U.S.) 307, 15 L.Ed. 421, the Supreme Court said: "The power as given is not to reprieve and pardon, but that the President shall have power to grant reprieves and pardons for offenses against the United States, except in cases of impeachment. The difference between the real language and that used in the argument is material. The first conveys only the idea of an absolute power as to the purpose or object for which it is given. The real language of the constitution is general, that is, common to the class of pardons, or extending the power to pardon to all kinds of pardons known in the law as such, whatever may be their denomination. We have shown that a conditional pardon is one of them."

 We think it is immaterial in this case whether the President's act of grace is denominated a pardon or a commutation; the former term being used to describe a complete and total cancellation of punishment, the latter a substitution of a lesser or partial punishment. The character of the document here under consideration must be determined by its legal effect. There is nothing illegal or against public policy in any of the conditions therein contained.

 It is contended that the appellant did not accept these conditions; but the District Judge found as a fact that the

commutation, with the conditions therein contained, was accepted by him, and we fully concur in this finding. The record reveals that appellant could read and write; that he signed a receipt for the document when he received it; and that he produced and relied upon it before the Board of Special Inquiry at Ellis Island when he returned from his trip to Italy. It is held in a number of cases that a prisoner may not accept the benefits of clemency without accepting the conditions attached thereto. We therefore conclude that the appellant accepted the conditions contained in his commutation when he accepted the document granting it. United States v. Wilson, 7 Pet. 150, 8 L.Ed. 640; Burdick v. United States, 236 U.S. 79, 35 S.Ct. 267, 59 L.Ed. 476.

■■ We cannot agree with the contention of appellant that, at the time of revocation, he had already served his term of imprisonment; his contention being that if good-time credits for the whole period from 1910 to 1940 are counted, his term expired in 1930, and that if good-time credits were vested for the period preceding the President's conditional pardon, his term expired in April, 1936. There is no vested right in good-time credit until the date arrives when its allowance will end imprisonment. Aderhold v. Perry (C.C.A.) 59 F.(2d) 379. See, also, Carroll v. Zerbst (C.C.A.) 76 F.(2d) 961; Ebeling v. Biddle (C.C.A.) 291 F. 567; Morgan v. Aderhold (C.C.A.) 73 F.(2d) 171; Platek v. Aderhold (C.C.A.) 73 F.(2d) 173. Cf. U.S. ex rel. Anderson v. Anderson (C.C.A.) 76 F.(2d) 375.

The contention that appellant is entitled to good-time credit after the grant of his conditional commutation and before his return to prison is contrary to the nature of such credits. We must be careful not to confuse the effect of executive action with the status of a prisoner on parole. The conditional commutation granted appellant terminated his sentence at once and thereby automatically terminated his parole with all the conditions attached to his status as a parolee. It removed all restrictions upon him except the conditions of the commutation, and thereby ousted the jurisdiction over him of the Parole Board. Obviously, the purpose of appellant in asking executive clemency was to be released from the requirements of his parole status. It cannot be claimed that at one and the same time he was re-leased from the requirements of parole and still remained on parole.

■ In revoking the commutation and directing the appellant to be returned to prison, the President was acting within his powers. The constitutional power to grant reprieves and pardons includes the power to grant commutations on lawful conditions. The appellant was lawfully returned to prison where he is now held under sentence of the United States Court for the Southern District of New York, subject to such action, if any, as may be taken by the Parole Board.

The judgment discharging the writ of habeas corpus and remanding appellant to the custody of appellee is affirmed.