# Legislative Proposal to Nullify Criminal Convictions Obtained Under the Ethics in Government Act

A proposed bill would have the effect of nullifying all criminal convictions obtained under the Ethics in Government Act since that Act was passed in 1978. Under the Pardon Clause of the Constitution, U.S. Const. art. II, § 2, cl. 1, the President has broad power to take action to relieve individuals who have violated federal laws. By contrast, the Constitution gives Congress no authority to legislate a pardon for any particular individual or class of individuals. Therefore, the proposed bill exceeds Congress' power to legislate and would be an unconstitutional infringement on the President's pardon power.

June 3, 1986

MEMORANDUM OPINION TO THE ASSISTANT ATTORNEY GENERAL,
OFFICE OF LEGISLATIVE AND INTERGOVERNMENTAL AFFAIRS

We have reviewed the provisions of S. 2214, "A bill to clarify that a civil penalty is the exclusive penalty for violations of the ethics in government act." We defer to other components of the Department on the desirability as a policy matter of making civil penalties the exclusive remedy for enforcing the provisions of the Ethics Act. However, we have serious objections to the provision of the bill that purports to make it effective "on the date of enactment of the Ethics in Government Act." We understand that this provision is intended by the sponsors of S. 2214 to have the effect, *inter alia*, of nullifying all criminal convictions under the Act since its passage in 1978.[1] We believe that Congress has no authority to enact such a measure, and in addition, that it would be an unconstitutional intrusion on the President's constitutional power to pardon.

Under Article II of the Constitution, the President has the power to "grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment." U.S. Const. art. II, § 2, cl. 1. The President's constitutional pardon power is derived from, and has been interpreted in light of, the English Crown authority to alter and reduce punishments as it existed in 1787. *See generally Schick v. Reed*, 419 U.S. 256 (1974). The Presidential pardon power is multifaceted, and embraces a wide variety of acts that may relieve individu-

---

[1] We assume that the bill's "effective date" provision is also intended to effect the dismissal of all pending criminal investigations and prosecutions, as well as to estop any future ones. Our analysis here focuses only on the attempted legislative exoneration of persons *convicted* by judicial process of a crime under the Act.

Of course, if S. 2214 is intended to apply only where no government prosecution has been commenced, and not where an investigation or prosecution has been initiated or a conviction obtained, as a policy matter it would raise a serious question of disparate treatment.

als who have violated the law. A pardon may take the form of release from prison, remission of fines and forfeitures, commutation or alteration of a sentence, restoration of civil rights, dismissal of a prosecution, or a grant of immunity from prosecution. It may be absolute or conditional, and extended to a specific individual or to an entire class or community. It includes but is not limited to the power to grant amnesty or immunity from prosecution.[2]

By contrast, the Constitution gives Congress no authority to legislate a pardon for any particular individual or class of individuals. In the first case to be decided involving the President's pardon power, Chief Justice Marshall explained that a pardon is "an act of grace, *proceeding with the power entrusted with the execution of the laws*, which exempts the individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed." *United States* v. *Wilson*, 32 U.S. (7 Pet.) 150, 160 (1833) (emphasis supplied). Because the President's pardon power flows directly from the Constitution, it is not dependent on a legislative enactment, and cannot be infringed by Congress. *See Schick* v. *Reed*, 419 U.S. at 267; *United States* v. *Klein*, 80 U.S. (13 Wall.) 128, 148 (1872).[3] Although there is some support in the case law and historical precedent for congressional power in certain limited circumstances to effect the same result that would flow from an exercise of the President's pardon power, these circumstances are limited to those involving prospective grants of amnesty or immunity, or restoration of civil rights, to persons who have not yet been subjected to prosecution by the executive.[4] In no case we have found has Congress been held to have the power through self-executing legislation to grant relief in the form of remission of a prison sentence or monetary fine to individuals who have been convicted of violating a criminal statute.[5]

We know of only one previous occasion on which Congress has even attempted to legislate the release of convicted individuals. In S. 1145, a bill introduced in the 94th Congress to provide amnesty to persons who failed to register for the draft, included a provision directing the release from prison of

---

[2] There has been considerable discussion of and confusion over the difference between pardon and amnesty. *See, e.g.*, Freeman, *A Historical Justification and Legal Basis for Amnesty Today*, 1971 Ariz. St. U. L.J. 515, 524–527 (1971). As a general matter, amnesty is understood as referring only to preprosecution relief extended to whole classes or communities. The relief available through the President's pardon power may of course include this anticipatory immunity or forgiveness, but is not so limited. *See United States* v. *Klein*, 80 U.S. (13 Wall.) 128 (1872) (President's power to offer amnesty to former rebels); 20 Op. Att'y Gen. 330 (1892) (President's power to extend general amnesty to persons residing in Utah who had been guilty of polygamy).

[3] Congress has been held to have the power to enact laws empowering executive officers other than the President (though responsible to him) to remit fines or penalties incurred for violations of the law. *See The Laura*, 114 U.S. 411 (1885).

[4] For example, in the post-Civil War period Congress enacted several pieces of legislation restoring civil rights to former rebels. Indeed, its power to take such action is specifically recognized in the Fourteenth Amendment. *See* U.S. Const. amend. XIV, § 3. In *Brown* v. *Walker*, 161 U.S. 593 (1896), the Supreme Court upheld a statute requiring witnesses subpoenaed in connection with Interstate Commerce Commission proceedings to testify in return for a grant of absolute immunity from any subsequent prosecution. *See Burdick* v. *United States*, 236 U.S. 79, 94 (1915), describing the "substantial" differences between "legislative immunity" and a Presidential pardon.

[5] A number of state courts have held that acts of general amnesty passed by the legislature are invalid as an invasion of the executive's pardoning power. *See* 20 Op. Att'y Gen. 330 (1892) (collecting cases).

persons convicted and serving a sentence for so failing to register. The Department testified in opposition to this legislation, taking the position that Congress has no power to effect release from prison, through legislation or otherwise, and that it may not encroach upon the President's power in this regard. *See* Memorandum from Mary C. Lawton, Deputy Assistant Attorney General, Office of Legal Counsel to the Assistant Attorney General, Criminal Division (May 13, 1975).[6]

In sum, insofar as S. 2214 would have the effect of voiding or modifying in any respect criminal penalties imposed as a result of violations of the Ethics in Government Act, we believe it exceeds Congress' power to legislate, and would be an unconstitutional intrusion on the President's pardon power.[7]

DOUGLAS W. KMIEC
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[6] This Office also objected on the same grounds to provisions of the bill granting immunity to those who failed to register and to deserters, requiring the dismissal of all pending legal proceedings against such persons, and allowing persons serving a term of reconciliation service pursuant to President Ford's Clemency Proclamation 8313 to be released from such service. We did not object to provisions of the bill that granted an honorable discharge to all such persons who had served in the armed forces, and restoring the citizenship of former citizens who had renounced their citizenship because of disapproval of United States involvement in Indochina. With respect to the latter act, we remarked that "[t]o restore the original citizenship of such persons may be an act of amnesty, but it is certainly not the constitutional equivalent of an Article II 'pardon.'" Memorandum from Mary C. Lawton, Deputy Assistant Attorney General, Office of Legal Counsel to the Assistant Attorney General, Criminal Division (May 13, 1975). As authority for such a legislative enactment, we cited Congress' plenary power over citizenship and naturalization under Article I, § 8, cl. 4 of the Constitution.

[7] It could also be argued that such legislation would infringe the courts' power to interpret and apply the law, and intrude upon the integrity of the judicial process. *Compare United States* v. *Klein*, 80 U.S. at 146–47 (legislation attempting to withdraw court's jurisdiction to consider the effect of a Presidential pardon infringes judicial power and violates principle of separation of powers) *with Ex Parte Grossman*, 267 U.S. 87 (1925) (upholding a Presidential pardon of a contempt of court against an argument that it violated separation of powers).