KITCHENS, Justice,
concurring in part and dissenting in part:
¶ 18. The majority is correct to hold that Counts II and III of Polk’s indictment, having been “retired to the files,” are eligible for expungement pursuant to Mississippi Code Section 99-15-26(5) (Supp.2014). But under the law of this State, a full, complete, and unconditional gubernatorial pardon as to Count I, the charge of sale of methylenedioxymeth-amphetamine to which Polk pled guilty, entitles him to expungement. I therefore concur in part and dissent in part.
¶ 19. Polk received the following pardon on January 10, 2012:
NOW, THEREFORE, I, Haley Barbour, Governor of the State of Mississippi, under and by virtue of the authority vested in me by the Constitution and Laws of this State, do hereby grant to Zachary Kane Polk a full, complete, and unconditional pardon for the crime and conviction named herein; and henceforth, shall be absolved from all legal consequences of this crime and conviction.
(Emphasis added.) In 1878, this Court adopted the existing jurisprudence of the United States Supreme Court on the subject of pardons:
The doctrine of the authorities is, that “a pardon reaches both the punishment prescribed for the offence, and the guilt of the offender,” and that “it releases the punishment and blots out of existence the guilt, so that, in the eye of the law the offender is as innocent as if he had never committed the offense.” “If granted after conviction, it removes the penalties and disabilities, and restores him [the convict] to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.” Ex parte Garland, [71 U.S. 383, 18 L.Ed. 366,] 4 Wall. 333, 380 [ (1866) ]; United States v. Padelford, [76 U.S. 531, 19 L.Ed. 788,] 9 Wall. 531 [(1869)]; United States v. Klein, [80 U.S. 128, 20 L.Ed. 519,] 13 Wall. 128 [ (1871) ]; Car-lisle v. United States, [83 U.S. 147, 21 L.Ed. 426,] 16 Wall. 147 [ (1872) ]; Knote v. United States, 95 U.S. 149[, 5 Otto 149, 24 L.Ed. 442 (1877) ]. In the case last cited, it is said that “a pardon is an act of grace by which an offender is released from the consequences of his offence, so far as such release is practicable and within the control of the pardoning power, or of officers under its direction.” “In contemplation of law, it so far blots out the offence.... ”
Jones v. Bd. of Registrars of Alcorn County, 56 Miss. 766, 768, 31 Am. Rep. 385 (1878) (emphasis added). In 1931, this Court reiterated and affirmed the broad rule from Jones in Ex Parte Crisler:
A pardon by the governor is an act of sovereign grace, proceeding from the same source which makes conviction of crime as ground of exclusion from suffrage. The act of absolution is of as high derivation and character as the act of proscription. The pardon must be held to rehabilitate the person in all his *972 rights as a citizen, and to deny to any officer of the state the right to impute to him the fact of his conviction. After the pardon, he is as if he was never convicted. It shall never be said of him that he was convicted. The pardon obliterates the fact of conviction, and makes it as if it never was.
Ex Parte Crisler, 159 Miss. 247, 250, 132 So. 103 (1931) (quoting Jones, 56 Miss, at 768) (emphasis added).
¶ 20. The majority attempts to efface the memory of this jurisprudence by distinguishing Crisler. The Crisler case involved an attorney who was seeking annulment of an order of disbarment entered following a conviction of embezzlement. Crisler, 159 Miss, at 249, 132 So. 103. It was held in that case that “a full pardon absolves an attorney at law from all the consequences of an order of disbarment ... as part of the punishment for the commission of a crime.” Id. at 251, 132 So. 103. Nevertheless, Crisler approvingly reiterated the rule from Jones, in which this Court restored suffrage to a person pardoned of his crime by the Governor. Jones, 56 Miss, at 771. The rule articulated in Jones emanated from the jurisprudence of the United States Supreme Court, many cases of which involved the extent of the presidential pardons extended by Presidents Lincoln and Johnson to persons involved in rebellion against the United States during the 1860s. Chief Justice Salmon P. Chase opined that, “[i]n the case of Garland, this court held the effect of a pardon to be such ‘that in the eye of the law the offender is as innocent as if he had never committed the of-fence’....” U.S. v. Padelford, 76 U.S. 531, 542, 19 L.Ed. 788, 9 Wall. 531 (1869) (quoting Garland, 4 Wall, at 380, 18 L.Ed. 366). Logic dictates that, in such case, there would be no public record.
¶ 21. In spite of the wide latitude with which this Court historically has treated the effect of gubernatorial pardons, the majority today incorrectly and unnecessarily restricts their scope, relying on authority from jurisdictions with more restrictive standards than Mississippi observes. The majority relates that “[t]he Supreme Court has also greatly narrowed Garland’s statements) regarding the effect of a pardon” (citing Nixon v. United States, 506 U.S. 224, 113 S.Ct. 732, 122 L.Ed.2d 1 (1993)). Indeed, various state and federal courts hold that the broad Garland language has been declared to be dicta, now disregarded by the United States Supreme Court. See, e.g., In re Abrams, 689 A.2d 6, 17 (D.C. 1997). But, even if the Garland language subsequently has been rendered dicta by the Supreme Court and other courts, its more lenient standard remains viable amid the common law of this State. See Crisler, 159 Miss, at 250, 132 So. 103; Jones, 56 Miss, at 768.
¶ 22. The majority additionally quotes language from the case of Burdick v. United States, 236 U.S. 79, 94-95, 35 S.Ct. 267, 59 L.Ed. 476 (1915), for the proposition that the language in Garland since has been disregarded. In that case, President Woodrow Wilson offered to Burdick “a full and unconditional pardon for all offenses against the United States which he ... has committed or may have committed” in exchange for Burdick’s testimony before a federal grand jury investigating alleged customs fraud. Burdick, 236 U.S. at 85, 35 S.Ct. 267. Burdick refused the pardon, having been convicted of no crime. Id. at 87, 35 S.Ct. 267. His continued refusal to testify before the grand jury resulted in an adjudication of contempt and incarceration. Id. at 86-87, 35 S.Ct. 267. The United States Supreme Court, which ultimately ordered Burdick discharged from custody, distinguished legislative immunity and a presidential pardon:
The latter carries an imputation of guilt; acceptance a confession of it. The for- *973 ' mer has no such imputation or confession. It is tantamount to the silence of the witness. It is noncommittal. It is the unobtrusive act of the law given protection against a sinister use of his testimony, not like a pardon, requiring him to confess his guilt in order to avoid a conviction of it.
Id. at 94, 35 S.Ct. 267. Burdick, which involved an unaccepted, preconviction pardon, thus has no bearing on the question of whether a pardon entitles the pardonee to an expungement.
¶23. At the time the pardon issued, Polk, a former drug abuser now employed at the Betty Ford Clinic in Rancho Mirage, California, had not been incarcerated since 2009. Consequently, Polk’s pardon, which proclaims that it is “full, complete, and unconditional,” is constricted by this Court to a mere pretense of clemency, a fiction having no legal effect whatsoever. The majority opines that “an unconditional pardon solely removes all legal punishment for the offense and prevents any future legal disability based on that offense. It does not edit history.” But a record of conviction is a “punishment,” not unlike the restrictions on a person’s liberty which may accompany conviction.[3]
¶ 24. Mississippi Code Section 99-15-26(5) (Supp.2014) provides that: “[u]pon petition therefor, the court shall expunge the record of any case in which an arrest was made, the person arrested was released, and the case was dismissed or the charges were dropped or there was no disposition of such case.” Coupled with the broad effect of a gubernatorial pardon under the common law of this State, which “makes [the fact of conviction] as if it never was,” this statute mandates ex-pungement. Crisler, 159 Miss, at 250, 132 So. 103 (quoting Jones, 56 Miss, at 769).
¶ 25. In light of the broad effect of gubernatorial pardons under the common law of this State and the statute which mandates expungement, I would hold that the Circuit Court of Oktibbeha County possessed authority to expunge Polk’s record of conviction and erred by not so doing. Respectfully, I concur in part and dissent in part.
DICKINSON, P.J., CHANDLER AND COLEMAN, JJ., JOIN THIS OPINION.

. Further, the State points out in its brief that an expungement would not "remove the criminal record from every database. Truth is the arrest, indictment and the conviction will always show up in background checks. The power of an expungement order is only directed at governmental agencies." If it is true that the criminal record is readily obtainable by other means, this substantially ameliorates the State’s concern over expungement of the record of Polk's criminal history. Indeed the State’s nerves can be soothed further by Mississippi Code Section 9-7-139 (Rev. 2002), which requires the maintenance of the pardon itself: ”[t]he county shall furnish and the circuit clerk shall maintain a permanent record of pardons and the circuit clerk may certify the fact of any recorded pardon for use in any court or agency, state or federal.”