KITCHENS, Justice,
dissenting:
¶ 19. The breadth of Mississippi common law regarding the effect of a gubernatorial pardon persuades me that Hentz is entitled to an expungement of her criminal record. Because my learned colleagues in the plurality have reached a contrary conclusion, I respectfully dissent.
¶ 20. Hentz received the following pardon on January 10, 2012:
NOW, THEREFORE, I, Haley Barbour, Governor of the State of Mississippi, under and by virtue of the authority vested in me by the Constitution and Laws of this State, do hereby grant to Rebecca Hentz née a/k/a Rebecca What-ley a/k/a Rebecca Hentz a full, complete and unconditional pardon for the crime and conviction named herein; and henceforth, shall be absolved from all legal consequences of this crime and conviction.
(Emphasis added.) This Court’s longstanding jurisprudence regarding the scope of executive pardons tracks that of the United States Supreme Court:
The doctrine of the authorities is, that “a pardon reaches both the punishment prescribed for the offence, and the guilt of the offender,” and that “it releases the punishment and blots out of existence the guilt, so that, in the eye of the law the offender is as innocent as if he had never committed the offense.” “If granted after conviction, it removes the penalties and disabilities, and restores him [the convict] to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.” Ex parte Garland, [71 U.S. 333, 18 L.Ed. 366,] 4 Wall. 333, 380 [ (1866) ]; United States v. Padelford, [76 U.S. 531, 19 L.Ed. 788,] 9 Wall. 531 [(1869)]; United States v. Klein, [80 U.S. 128, 20 L.Ed. 519,] 13 Wall. 128 [ (1871) ]; Carlisle v. United States, [83 U.S. 147, 21 L.Ed. 426,] 16 Wall. 147 [ (1872) ]; Knote v. United States, 95 U.S. 149 [, 5 Otto 149, 24 L.Ed. 442 (1877) ]. In the case last cited, it is said that “a pardon is an act of grace by which an offender is released from the consequences of his offence, so far as such release is practicable and within the control of the pardoning power, or of officers under its direction.” “In contemplation of law, it so far blots out the offence.... ”
Jones v. Bd. of Registrars of Alcorn County, 56 Miss. 766, 768, 31 Am. Rep. 385 (1879) (emphasis added). Likewise, in Ex Parte Crisler, this Court maintained the rule from Jones that:
A pardon by the governor is an act of sovereign grace, proceeding from the same source which makes conviction of crime a ground of exclusion from suffrage. The act of absolution is of as high derivation and character as the act *1145 of proscription. The pardon must be held to rehabilitate the person in all his rights as a citizen, and to deny to any officer of the State the right to impute to him the fact of his conviction. After the pardon, he is as if he was never convicted. It shall never be said of him that he was convicted. The pardon obliterates the fact of conviction, and makes it as if it never was.
Ex Parte Crisler, 159 Miss. 247, 250, 132 So. 103 (1931) (quoting Jones, 56 Miss, at 768) (emphasis added).
¶ 21. The plurality attempts to distinguish Crisler: “the opinion expressly limits itself to cases of attorney disbarment.” Crisler, decided in 1931, did involve an attorney, disbarred from the practice of law following a conviction of embezzlement, who sought reversal of the order of disbarment. Crisler, 159 Miss, at 249, 132 So. 103. Likewise is true, as the plurality notes, that this Court held that “a full pardon absolves an attorney at law from all the consequences of an order of disbarment ... as part of the punishment for the commission of a crime.” Id. at 251, 132 So. 103. But Crisler relied on a broader rule articulated by this Court in the 1878 Jones case, which involved restoration of suffrage to a convicted person following a presidential pardon. Jones, 56 Miss, at 771. The Jones Court cited precedents in which the United' States Supreme Court contemplated the extent of the presidential pardons offered by Presidents Lincoln and Johnson to persons involved in rebellion against the United States during the 1860s. In U.S. v. Padelford, for instance, Chief Justice Salmon P. Chase opined that, “[i]n the case of Garland, this court held the effect of a pardon to be such ‘that in the eye of the law the offender is as innocent as if he had never committed the offence’...” U.S. v. Padelford, 76 U.S. 531, 543, 19 L.Ed. 788, 9 Wall. 531 (1869) (quoting Garland, 4 Wall, at 380) (emphasis added).
¶ 22. In spite of - its broad, sweeping language, the plurality recites that “[t]he language in Garland, however, has since been held to be dicta; and more recent caselaw holds that a pardon does not ‘blot out’ the existence of guilt....” (citing Hirschberg v. Commodity Futures Trading Comm’n, 414 F.3d 679, 682 (7th Cir.2005)). With respect, an opinion from the United States Court of Appeals for the Seventh Circuit is of no moment to this Court’s analysis of the effect given an executive pardon under controlling Mississippi case law. Beyond that, one of the cases upon which the Seventh Circuit relied to support its position that the Garland language more recently has been rendered dicta is Burdick v. United States, 236 U.S. 79, 94, 35 S.Ct. 267, 59 L.Ed. 476 (1915). There, President Woodrow Wilson offered Burdick a pardon in exchange for his testimony. Burdick, 236 U.S. at 85, 35 S.Ct. 267. Burdick refused the pardon, then was held in contempt and incarcerated. Id. at 87, 35 S.Ct. 267. The question before the United States Supreme Court, which ultimately ordered Burdick discharged from custody, involved the distinction between legislative immunity and a presidential pardon:
The latter carries an imputation of guilt; acceptance a confession of it. The former has no such imputation or confession. It is tantamount to the silence of the witness. It is noncommittal. It is the unobtrusive act of the law given protection against a sinister use of his testimony, not like a pardon, requiring him to confess his guilt in order to avoid a conviction of it.
Burdick, 236 U.S. at 95, 35 S.Ct. 267. But Burdick involved a preconviction pardon which Burdick refused; the case is silent *1146 regarding whether a pardon entitles the pardonee to an expungement.
¶ 23. The plurality’s citation of ex-pungement eases from the Mississippi Court of Appeals, likewise, is not helpful regarding the effect of a gubernatorial pardon on a convict’s request for expungement. Neither Eubanks v. State, 53 So.3d 846 (Miss.Ct.App.2011), nor Turner v. State, 876 So.2d 1056, 1059 (Miss.Ct.App.2004), addresses the question that is before this Court today: whether a gubernatorial pardon entitles a pardonee to an expungement. The opinion from the Mississippi Attorney General referenced by the majority answers the question in the negative. But in the context of an adversarial system in which the Attorney General is an interested party in this very case, his opinion, while interesting, is far from dispositive.
¶ 24. The plurality further opines that, “[ejxpungement is statutory in nature, and the Mississippi Legislature has ‘authorized expungement of criminal offender records in limited cases.... ’ Caldwell v. State, 564 So.2d 1371, 1372 (Miss.1990).” But Mississippi Code Section 99-15-57(2) (Rev. 2007) provides that, “[ujpon petition therefor, the court shall expunge the record of any ease in which an arrest was made, the person arrested was released and the case was dismissed or the charges were dropped or there was no disposition of such case.” Section 99-15-57(2), coupled with the breadth of the common law language articulated in Crisler that a gubernatorial pardon “makes [the fact of conviction] as if it never was,” mandates expungement. Crisler, 159 Miss, at 250, 132 So. 103.
¶ 25. Article 5, Section 124, of the Constitution of the State of Mississippi empowers the governor “to grant reprieves and pardons.” Today, the plurality diminishes the effect of gubernatorial pardons in Mississippi. That which previously was regarded as “an act of sovereign grace” now is relegated to a mere piece of paper emblazoned with the dubious phrase “absolved from all legal consequences of this crime and conviction.” I, therefore, dissent.
DICKINSON, P.J., CHANDLER AND COLEMAN, JJ., JOIN THIS OPINION.