### OSBORN *v.* UNITED STATES.

1. Subject to exceptions therein prescribed, a pardon by the President restores to its recipient all rights of property lost by the offence pardoned, unless the property has by judicial process become vested in other persons.
2. A condition annexed to a pardon, that the recipient shall not by virtue of it claim any property, or the proceeds of any property, sold by the order, judgment, or decree of a court, under the confiscation laws of the United States, does not preclude him from applying to the court for the proceeds of a confiscated money-bond secured by mortgage, which were collected by the officers of the court in part by voluntary payment by the obligors, and in part by sale of the lands mortgaged. The condition is only intended to protect purchasers at judicial sale, decreed under the confiscation laws, from any claim of the original owner for the property sold or the purchase-money.
3. The proceeds of property confiscated, paid into court, are under its control until an order for their distribution is made, or they are paid into the hands of the informer entitled to them, or into the treasury of the United States.
4. Where moneys belonging to the registry of the court are withdrawn from it without authority of law, the court can, by summary proceedings, compel their restitution; and any one entitled to the moneys may apply to the court by petition for a delivery of them to him.

ERROR to the Circuit Court of the United States for the District of Kansas.

Submitted on printed arguments by *Messrs. R. M. Corwine, Q. Corwine, J. W. English, Henry Beard,* and *C. H. Armes,* for

the plaintiff in error, and by *Mr. E. S. Brown* for the defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court.

The material questions presented in this case for our determination relate, first, to the effect of the President's pardon upon the rights of the petitioner to the proceeds of his property confiscated by the decree of the District Court; and, second, to the power of the court to compel restitution to its registry of moneys illegally received by its former officers.

In May, 1863, the District Court of Kansas decreed the condemnation and forfeiture to the United States of the several bonds and mortgages described in the information filed by the government. In June following, it ordered that the several debtors on these bonds should, within five months thereafter, pay into court the money due by them respectively; and that, in default of such payment, the clerk should issue to the marshal orders for the sale of the mortgaged property, upon which he should proceed as on execution under the laws of Kansas. Some of the debtors paid the amounts due by them into court; but the majority of them failed in this respect, and orders for the sale of the property mortgaged were issued to the marshal. To him the greater number paid without sale; but, in some instances, sales were made. Over $20,000 in this way came into the possession of officers of the court.

There were at the time numerous other confiscation cases pending in the court, and the moneys received from them were indiscriminately mixed with the moneys received in the cases against the property of the petitioner. None of the moneys received in any of the cases was paid into the treasury of the United States, and no order was made by the court for any such payment. Some of them were deposited in a banking-house at Leavenworth, designated as the place of deposit of moneys paid into court, and afterwards drawn out; some were obtained by officers of the court, and to an extent greatly in excess of their legal charges; and some of them were paid to the judge. The moneys from the different confiscation cases, being indiscriminately mixed, would seem to have been taken by the officers of the court whenever funds were needed by

them, without regard to the sources from which they were derived, or the propriety of their application to the purposes for which they were used.

In April, 1866, the petitioner applied to the court for leave to file a petition for the restoration to him of the proceeds of his property, after deducting the costs of the legal proceedings, alleging that he had been pardoned by the President of the United States, and setting forth a copy of the pardon. The pardon was issued in September, 1865, and was in terms a full pardon and amnesty for all offences committed by the petitioner, arising from participation, direct or indirect, in the rebellion, subject to certain conditions. One of these conditions provided that the petitioner should pay all costs which may have accrued in proceedings instituted or pending against his person or property before the acceptance of the pardon. Another condition was, that the petitioner should not by virtue of the pardon claim any property, or the proceeds of any property, which had been sold by the order, judgment, or decree of a court under the confiscation laws of the United States.

The District Court refused the application; but the Circuit Court, on appeal, reversed its order, and allowed the petition to be filed. The District Court held, it would seem, that the conditions attached to the pardon precluded the petitioner from seeking to obtain the proceeds of his property: but the Circuit Court was of opinion that the effect of a pardon was to restore to its recipient all rights of property lost by the offence pardoned, unless the property had, by judicial process, become vested in other persons, subject to such exceptions as were prescribed by the pardon itself; that until an order of distribution of the proceeds was made in these cases, or the proceeds were actually paid into the hands of the party entitled as informer to receive them, or into the treasury of the United States, they were within the control of the court, and that no vested right to the proceeds had accrued so as to prevent the pardon from restoring them to the petitioner. Woolworth's Rep. 198. This ruling is here assailed by officers of the court, who are called upon to make restitution of a portion of the proceeds they obtained, not by the United States, who are alone interested in the decision. It is not a matter for these officers to

complain that proceeds of property adjudged forfeited to the United States are held subject to the further disposition of the court, and possible restitution to the original owner. That is a matter which concerns only the United States, and they have not seen fit to object to the decision. But, independently of this consideration, we are clear that the decision was correct. The pardon, as is seen, embraces all offences arising from participation of the petitioner, direct or indirect, in the rebellion. It covers, therefore, the offences for which the forfeiture of his property was decreed. The confiscation law of 1862, though construed to apply only to public enemies, is limited to such of them as were engaged in and gave aid and comfort to the rebellion. 12 Stat., sect. 7, p. 590. The pardon of that offence necessarily carried with it the release of the penalty attached to its commission, so far as such release was in the power of the government, unless specially restrained by exceptions embraced in the instrument itself. It is of the very essence of a pardon that it releases the offender from the consequences of his offence. If in the proceedings to establish his culpability and enforce the penalty, and before the grant of the pardon, the rights of others than the government have vested, those rights cannot be impaired by the pardon. The government having parted with its power over such rights, they necessarily remain as they existed previously to the grant of the pardon. The government can only release what it holds. But, unless rights of others in the property condemned have accrued, the penalty of forfeiture annexed to the commission of the offence must fall with the pardon of the offence itself, provided the full operation of the pardon be not restrained by the conditions upon which it is granted. The condition annexed to the pardon of the petitioner does not defeat such operation in the present case. The property of the petitioner forfeited consisted of numerous money-bonds, secured by mortgage on lands in Kansas. These bonds were not sold under the confiscation laws: they were collected by the officers of the court, in part by voluntary payments by the obligors, and in part by sale of the lands mortgaged. These lands did not belong to the petitioner. A mortgage in Kansas does not pass the title of the property mortgaged: it is a mere security for the debt, to

which the creditor may resort to enforce payment. The property mortgaged was not confiscated nor sold under the confiscation laws. When a bond of one of the debtors was not voluntarily paid, the court proceeded to enforce its payment by the ordinary measure resorted to in the case of mortgages; that is, a sale of the security.

The object of the condition in question annexed to the pardon was to protect the purchaser of property of the petitioner, at a judicial sale decreed under the confiscation laws, from any claim by him either for the property or the purchase-money. Numerous sales had been made under decrees in confiscation cases, and a similar condition was usually inserted in pardons to secure the purchasers from molestation. Full effect is thus given to the condition; and, as a pardon is an act of grace, limitations upon its operation should be strictly construed.

But it is contended, that, as the bonds were forfeited to the government by the decree of the District Court, there can be no restitution except by grant or conveyance of some kind from the government, and that the proprietary interests of the government can only be disposed of by act of Congress. The answer is, that the forfeiture results, not from the decree of the court, but from the offence which the decree establishes and declares. The pardon, in releasing the offence, obliterating it in legal contemplation (*Carlisle* v. *United States*, 16 Wall. 151), removes the ground of the forfeiture upon which the decree rests, and the source of title is then gone.

But, were this otherwise, the constitutional grant to the President of the power to pardon offences must be held to carry with it, as an incident, the power to release penalties and forfeitures which accrue from the offences.

The petitioner being restored by the pardon to his rights in the proceeds of the property forfeited, after deducting from them the costs of the legal proceedings, naturally invoked the aid of the court in which the proceedings were had, or to which they were transferred, for restitution of the proceeds. Proceedings in confiscation cases are required by the statute to conform as nearly as may be to proceedings in admiralty or revenue cases; and in admiralty it is the constant practice for persons having an interest in proceeds in the registry of the

court to intervene by petition and summary proceedings to obtain a delivery of the moneys to which they are entitled. The forty-third admiralty rule recognizes this right; and in cases without number the right has been enforced. The power of the court over moneys belonging to its registry continues until they are distributed pursuant to final decrees in the cases in which the moneys are paid. If from any cause they are previously withdrawn from the registry without authority of law, the court can, by summary proceedings, compel their restitution. In the present case, it is no answer to the order for restitution that the appellants received the moneys they obtained as officers of the court, and that they have long since ceased to be such officers. If the moneys were illegally taken, they must be restored; and, until a decree of distribution is made and enforced, the summary power of the court to compel restitution remains intact. The power could be applied in no case more fittingly than to previous officers of the court.

The careful and labored reports of the commissioners appointed by the court to examine into the proceedings in the confiscation cases, ascertain the expenses incurred, and trace out as far as possible the moneys received, were properly confirmed. There is no objection to their findings which merits consideration.

The decree brought before us for review must be affirmed, except as to the costs of the proceedings subsequent to the presentation of the application of the petitioner. Those costs should be apportioned against the parties ordered to make restitution, according to the respective amounts they are adjudged to restore. The cause will, therefore, be remanded, with directions to modify the decree in this particular; but, in all other respects,      *The decree is affirmed.*