Nathan G. GROSSGOLD,
Plaintiff-Appellant,

v.

SUPREME COURT OF ILLINOIS et al.,
Defendants-Appellees.

No. 76–1941.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 18, 1977.

Decided June 23, 1977.

---

Robert S. Bailey, Chicago, Ill., for plaintiff-appellant.

William J. Scott, Atty. Gen., Herbert Lee Caplan, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, PELL and TONE, Circuit Judges.

CUMMINGS, Circuit Judge.

In August 1962 plaintiff was qualified to practice law in Illinois and became a member of the bar of the Supreme Court of Illinois. On April 30, 1969, he was convicted by a jury under nine counts of an indictment charging violations of the mail fraud statute (18 U.S.C. § 1341). Under Illinois law, that crime involves moral turpitude. *In re Hutul*, 54 Ill.2d 209, 214, 215, 296 N.E.2d 332 (1973); *In re Fumo*, 52 Ill.2d 307, 309, 288 N.E.2d 9 (1972). We affirmed this conviction in *United States v. Bornstein and Grossgold*, 447 F.2d 742 (7th Cir. 1971), certiorari denied, 404 U.S. 851, 92 S.Ct. 88, 30 L.Ed.2d 91.

On September 17, 1974, because of his conviction, plaintiff was suspended from practice for a period of three years by the Supreme Court of Illinois. *In re Grossgold*, 58 Ill.2d 9, 317 N.E.2d 25 (1974). The order of suspension was entered notwithstanding the fact that Grossgold had informed the court that he had a pending petition for a presidential pardon. A petition for rehearing was denied by that court on November 26, 1974.

On December 18, 1974, President Ford granted a full and unconditional pardon to plaintiff. This was brought to the attention of the Illinois Supreme Court by a petition for reconsideration based solely on plaintiff's presidential pardon. However, the petition for reconsideration was denied on January 15, 1975. The matter of the presidential pardon was also brought to the attention of the Supreme Court of the United States in plaintiff's petition for writ of certiorari to the Illinois Supreme Court, which was denied on May 12, 1975. *In re*

*Grossgold*, 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 451.[1]

In his federal complaint filed on March 2, 1976, plaintiff asked the district court (1) to issue a writ of mandamus to compel the defendant Supreme Court of Illinois to reinstate him to the Illinois Bar or (2) to issue a declaratory judgment that his suspension was null and void. The Chicago Bar Association was accorded *amicus curiae* status.[2] The defendant Supreme Court filed a motion to dismiss and the plaintiff filed a cross-motion for summary judgment. On August 2, 1976, the district court granted the defendant's motion to dismiss the complaint for lack of jurisdiction over the subject matter. In his supporting memorandum of decision, the district judge held that plaintiff had exhausted his final legal remedy when the Supreme Court of the United States denied his petition for certiorari, stating:

> "He [plaintiff] cannot obtain a review of a final decision of the Illinois Supreme Court which was entered after his pardon by filing an action in this court as an alternative to a review by the United States Supreme Court [which had previously denied certiorari to the Illinois Supreme Court]. *Mackay v. Nesbett*, 412 F.2d 846 (9th Cir. 1969); see also *Ginger v. Circuit Court for the County of Wayne*, 372 F.2d 621 (6th Cir. 1967), Cert. den. 387 U.S. 935 [87 S.Ct. 2061, 18 L.Ed.2d 998] (1967)."

Plaintiff appeals from the entry of this order. We affirm.

Plaintiff contends that the Supreme Court of Illinois acted merely in an administrative capacity as the licensing agency for attorneys rather than in its judicial capacity, so that the district court has jurisdiction under 28 U.S.C. § 1343(3).[3] He asserts that there was jurisdiction because otherwise there would be no judicial forum to pass upon his federal constitutional claim that the three-year suspension granted by a state "administrative agency" unconstitutionally interfered with the presidential pardon. This would impose a constitutional deprivation on the plaintiff. If no court could review the constitutional question, the alleged constitutional deprivation could be redressed in district court under the Section 1343(3) subject matter jurisdiction grant. If indeed judicial review of a claimed constitutional deprivation were cut off entirely, grave constitutional problems would be posed. Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv. L.Rev. 1362 (1953). The flaw in plaintiff's contentions is that it overlooks the judicial review already accorded him. The Illinois Supreme Court, which is fully competent to pass on federal constitutional questions, has passed upon this constitutional question, and its decision became final when the Supreme Court of the United States denied certiorari. Since the Illinois Supreme Court was bound to pass on the constitutional question posed by the pardon, the court's denial of Grossgold's petition for reconsider-

---

1. Under Rule 59 of the Supreme Court, its mandate issued 25 days after May 12, 1975. Therefore the 3-year suspension will be in effect until June 6, 1978.

2. Grossgold's disciplinary action was governed by the Rules of the Illinois Supreme Court in effect prior to February 1, 1973. Then current Rule 751(a) appointed the Boards "and Committees on Grievances of the Chicago Bar Association and Illinois State Bar Association as Commissioners of the Court. They were empowered to make investigations concerning practices of attorneys which tend to defeat the administration of justice and to bring the Courts and the legal profession into disrepute. Rule 751(e) provided that at the conclusion of the taking of evidence on any complaint, the Board must make a report to the Court of its

conclusions of fact and law and that the parties might file exceptions to the report and briefs and arguments." Br. for Chicago Bar Association at 11.

3. In pertinent part 28 U.S.C. § 1343 grants original jurisdiction to the district courts of civil actions commenced:

> "(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; * * *."

ation necessarily implied that the constitutional question was being decided against the plaintiff. Consequently, there was no arguable constitutional "deprivation" upon which Section 1343 could operate to provide subject matter jurisdiction. The doctrine of *res judicata* bars any further litigation of this question.

 To avoid the *res judicata* defense, plaintiff advances the argument that the Supreme Court was merely acting as a state licensing agency, so that the district court should collaterally review its action "in precisely the same manner as that court could review the action of any State agency for federal unconstitutionality," citing *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. However, that argument is foreclosed by *In re Summers,* 325 U.S. 561, 565 n. 6, 65 S.Ct. 1307, 89 L.Ed. 1795 which establishes that orders issued involving disciplining members of the Illinois bar are "an exercise of *judicial* power * * *." (Emphasis supplied.) Accordingly, it is settled that disciplinary orders of the highest court of a state may be reviewed federally only in the Supreme Court by petition for certiorari and not by suits in the district courts. *Mackay v. Nesbett,* 412 F.2d 846 (9th Cir. 1969); *Ginger v. Circuit Court for Wayne County,* 372 F.2d 621, 625 (6th Cir. 1967); *Doe v. Pringle,* 550 F.2d 596 (10th Cir. 1976); *Feldman v. State Board of Law Examiners,* 438 F.2d 699 (8th Cir. 1971). We conclude that plaintiff pursued his proper remedy in the Supreme Court of Illinois and subsequently in the Supreme Court of the United States and is bound by the adverse result. *Ktsanes v. Underwood,* 552 F.2d 740, 743 (7th Cir. 1977), is not contrary, because there Ktsanes "was asking for ministerial action" by the Illinois Supreme Court and it was refused "by the court acting in an administrative capacity," so that he could not appeal from that court

directly to the Supreme Court under 28 U.S.C. § 1257. District court jurisdiction was permissible because Ktsanes claimed an Illinois Supreme Court rule "laying down general conditions" was discriminatory in violation of the Equal Protection Clause of the Fourteenth Amendment, 552 F.2d at 742–743, and this equal protection claim had not been raised in any judicial forum. Here the presidential pardon issue had been fully developed in the adversary proceedings before the Illinois Supreme Court. Unlike *Ktsanes,* the Illinois Supreme Court was functioning both in an administrative and a judicial capacity. Thus *Ktsanes* supports the conclusion that the district court lacked subject matter jurisdiction in this case. Because we find no subject matter jurisdiction, we need not decide whether judicial immunity would present a dispositive affirmative defense when state supreme court justices purportedly are acting in a non-judicial capacity.[4]

 Assuming federal jurisdiction *arguendo,* the presidential pardon did not wipe out the moral turpitude inherent in the factual predicate supporting plaintiff's mail fraud conviction. As Judge Sprecher carefully explained in *Bjerkan v. United States,* 529 F.2d 125, 128 n.2 (7th Cir. 1975), a pardon does not blot out guilt nor restore the offender to a state of innocence.[5] There we approved Professor Williston's analysis that "if character is a necessary qualification [as it is for the practice of law] and the commission of a crime will disqualify even though there have been no criminal prosecutions for the crime, the fact that the criminal has been convicted and pardoned does not make him more eligible."[6] Consistent with the *Bjerkan* holding, we recently held that the grant of immunity against the use of a lawyer-witness' compelled testimony under 18 U.S.C. Section 6002 would not foreclose disciplinary action against

---

4. Compare *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 with *Sparkman v. McFarlin,* 552 F.2d 172 (7th Cir. 1977).

5. In dissenting on other grounds in *Bjerkan,* Chief Judge Fairchild agreed that a presidential pardon does not remove all of the collateral

consequences of a conviction, including disqualifications by state licensing agencies. 529 F.2d at 129.

6. Williston, Does a Pardon Blot Out Guilt? 28 Harv.L.Rev. 647, 653 (1915).

him. *In re Daley,* 549 F.2d 469 (7th Cir. 1977). Applying *Bjerkan* here, we hold that a presidential pardon does not relieve an attorney from discipline. Accord: *Bowles v. Laws,* 59 App.D.C. 399, 45 F.2d 669, 671 (1930), certiorari denied, 283 U.S. 841, 51 S.Ct. 488, 75 L.Ed. 1452; see *People v. Gilmore,* 214 Ill. 569, 571–572, 73 N.E. 737 (1905); see also *Carlesi v. New York,* 233 U.S. 51, 57, 34 S.Ct. 576, 58 L.Ed. 843; *People ex rel. Prisament v. Brophy,* 287 N.Y. 132, 38 N.E.2d 468, 471 (1941), certiorari denied, 317 U.S. 625, 63 S.Ct. 62, 87 L.Ed. 506. Even if plaintiff had been acquitted of the criminal charge, an Illinois disciplinary proceeding based upon his allegedly criminal conduct would not be precluded. *In re Andros,* 64 Ill.2d 419, 422–423, 1 Ill.Dec. 325, 356 N.E.2d 513 (1976). He of course may urge the pardon as a consideration for reinstatement under Illinois Supreme Court Rule 767.[7]

Judgment affirmed.

---

**7.** For example, the letter transmitting the pardon from the Attorney General recited that the:

"grant of a federal pardon is an extraordinary act of grace which only the President may confer and which represents his determination of your fitness. In this way, the President recognizes that by observance of high moral standards you are worthy of the forgiveness which the pardon symbolizes.

President Ford has asked me to convey to you his best wishes for the future and to express his confidence that in the years to come you will continue to merit the trust that he has placed in you."