# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-1733

JOSEPH YASAK,

*Plaintiff-Appellant,*

v.

RETIREMENT BOARD OF THE POLICEMEN'S ANNUITY
AND BENEFIT FUND OF CHICAGO,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 251—**Ronald Guzman**, *Judge.*

_____

ARGUED SEPTEMBER 19, 2003—DECIDED FEBRUARY 4, 2004

_____


Before BAUER, RIPPLE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Joseph Yasak was convicted of a federal felony, and his request for pension benefits was denied as a result. Yasak then applied for and received a refund of his pension contributions. Years later, Yasak received a presidential pardon, and attempted to get his pension benefits restored. The pension board denied Yasak's request, and a federal district court agreed that the pension board had no duty to reinstate benefits. Because we find that Yasak forfeited his property interest in his pension when he elected to receive a refund of his pension contributions, we affirm the district court's decision.

## I. BACKGROUND

Joseph Yasak served as a Chicago police officer for almost twenty-eight years before retiring in September 1988. During that period, Yasak paid a portion of his salary into a police pension fund controlled by the Retirement Board of the Policemen's Annuity and Benefit Fund of Chicago (the Board). In December 1988, Yasak was convicted of making false declarations before a grand jury, a federal felony under 18 U.S.C. § 1623. The Board denied Yasak's request for pension benefits in April 1991, on the ground that pursuant to 40 ILL. COMP. STAT. 5/5-227, Yasak had forfeited his entitlement to pension benefits as a result of his felony conviction. Yasak then applied for and received a refund of his contributions to the fund. The Board's 1991 check was lost, so Yasak was issued a replacement check in January 1995, which he cashed.

Yasak received a full and unconditional pardon from former President William Jefferson Clinton in January 2001. In May 2001, Yasak asked the Board to restore his pension benefits both prospectively and retroactively, and provided a copy of the pardon to the Board. During the next six months, Yasak repeatedly asked the Board for various documents, and to calculate how much money he needed to repay to the fund to get benefits reinstated for himself and his wife. He also requested a hearing on his claim. Other than the issuance of two subpoenas that Yasak requested, Yasak received no response from the Board until December 2001, when the Board sent him a letter denying his claim. In the letter, the Board asserted that it lacked jurisdiction to reconsider its 1991 decision, and that even if it had jurisdiction, state law precluded reinstatement of benefits.

Yasak sought a declaratory judgment in federal district court in January 2002. Count I alleged that, as a result of his pardon, he had a property interest in his pension

benefits, and the Board had deprived him of his property without substantive and procedural due process in violation of 42 U.S.C. § 1983. Yasak also filed a petition for administrative review of the Board's decision in the Circuit Court of Cook County, and amended his federal complaint in March 2002 to include the administrative review claim; this became Count II.

The Board moved for dismissal under either Fed. R. Civ. P. 12(b)(1) or (6). After extensive briefing, the district court denied the Board's motion for dismissal under Rule 12(b)(1) as to Count I, but declined to exercise supplemental jurisdiction over Count II. It then granted the Board's motion to dismiss Count I under Rule 12(b)(6), finding that Yasak's voluntary acceptance of the refund of his pension contributions resulted in the relinquishment of his property interest in his pension, and Yasak's pardon did not reverse the effects of his acceptance. Yasak appeals the dismissal of Count I.

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's dismissal of a complaint under Fed. R. Civ. P. 12(b)(6), "examining a plaintiff's factual allegations and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff." *Chavez v. Ill. State Police*, 251 F.3d 612, 648 (7th Cir. 2001). Dismissal is warranted "only if the plaintiff could prove no set of facts in support of his claims that would entitle him to relief*." Id.*

### B. The Due Process Claims

The crux of Yasak's argument on appeal is as follows. By denying Yasak his pension benefits, the state punished

Yasak for his conviction. Although Yasak then received a refund of his pension contributions, his receipt of the refund was involuntary. Therefore, he never relinquished his property interest in his pension, and the issuance of the presidential pardon necessitates reinstatement of his pension benefits. Failure to reinstate his benefits violates the rule that once an individual receives a pardon, the state can no longer punish the individual for the crime for which he was pardoned. Although we sympathize with Yasak's predicament, we disagree with many of his assertions.

Yasak rightly notes that the forfeiture of his pension benefits following his felony conviction was intended to be a punishment for his conviction. *See Devoney v. Ret. Bd. of the Policemen's Annuity & Benefit Fund for the City of Chicago*, 769 N.E.2d 932, 935 (Ill. 2002) (explaining that the purpose of 40 ILL. COMP. STAT. 5/5-227 is to " 'discourage official malfeasance by denying the public servant convicted of unfaithfulness to his trust the retirement benefits to which he otherwise would have been entitled' ") (quoting *Kerner v. State Employees' Ret. Sys.*, 382 N.E.2d 243, 246 (Ill. 1978)). We further agree that in light of his pardon, the state cannot continue to punish Yasak for his conviction. As we explained in *Bjerkan v. United States*, 529 F.2d 125, 127-28 (7th Cir. 1975), "after a pardon, a state may not take cognizance of the offense pardoned in any way which would constitute a 'punishment.' " *See also Carlesi v. New York*, 233 U.S. 51, 57 (1914).

However, our analysis diverges from Yasak's when we consider his contention that his acceptance of the refund was involuntary. Notwithstanding Yasak's claim to the contrary, the Board did not force Yasak to accept a refund of his pension contributions. Yasak himself filled out an application and requested a refund. Indeed, Yasak's own complaint states the following: "Plaintiff *applied for a refund* of his contributions and the Board issued a refund to

him in April 1991."[1] (emphasis added). Yasak argues that because we must draw all reasonable inferences in his favor when reviewing the dismissal of his complaint, a finding that he voluntarily initiated the refund process is an impermissible inference. However, under the circumstances, this is not an impermissible inference, but rather a rational conclusion dictated by Yasak's own language. Indeed, based on the pleadings, it would be unreasonable to assume that Yasak's actions were anything but voluntary.[2] *See Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000) ("[W]hile we must draw *reasonable* inferences in the [plaintiffs'] favor, we should not draw inferences that while theoretically

---

[1] In his initial appellate brief, Yasak states that "[h]is livelihood of twenty-eight (28) years was over and he had one of two choices to make. He could either accept the refund or he could allow the fund to retain thousands of dollars of his money. [His] acceptance of the fund was compelled by the overwhelming circumstances in which he found himself. [He] truly had no choice but to accept the refund." We understand that the thought of letting the Board retain his money might have been unpalatable to Yasak. However, he fails to cite any support for his argument that he sought the refund under duress. (As an aside, we note that it seems unlikely that financial concerns drove Yasak's decision, as he received a refund check in 1991, but does not complain about the fact that the check was lost and apparently not replaced and cashed until 1995.)

[2] For the first time in his reply brief, Yasak claims that his acceptance of a refund is of no consequence because under 40 ILL. COMP. STAT. 5/5-163(a) & 5/5-227, the Board was required to give him a refund whether he applied for one or not. Not only does this argument come too late, *see Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992), but even if we agreed that the statutes impose such a requirement, Yasak offers no evidence that the Board was required to give Yasak his refund in 1991 as opposed to some later date, and thus fails to challenge persuasively the Board's argument that Yasak's actions alone triggered the provision of the refund in this instance.

plausible are inconsistent with the pleadings.") (emphasis in original); *cf. Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 459 (7th Cir. 1999) (explaining that in the summary judgment context, "while any inferences drawn from the facts must be viewed in the light most favorable to the non-moving party, only reasonable inferences need be made").

Once we accept the fact that Yasak voluntarily sought a refund, it becomes clear that the issuance of the pardon does not trigger reinstatement of his pension benefits. In *Knote v. United States*, the Supreme Court stated that

> [a] pardon is an act of grace by which an offender is released from the consequences of his offence, so far as such release is practicable and within control of the pardoning power. . . . It gives [the offender] a new credit and capacity, and rehabilitates him to that extent in his former position. But it does not make amends for the past. It affords no relief for what has been suffered by the offender in his person by imprisonment, forced labor, or otherwise.
> . . .

95 U.S. 149, 153 (1877). Later cases have made clear that numerous acts committed by the state may be deemed "consequences of [an] offence" from which pardons provide relief. *See, e.g., Carlesi*, 233 U.S. at 57 (stating that the "act of the state in taking into consideration a prior conviction" despite a pardon would be "void" if "it was in any just sense a punishment" for the prior conviction); *Bjerkan*, 529 F.2d at 128 (explaining that the deprivation of basic civil rights "by a state," such as the right to vote, would constitute punishment in violation of a pardon).

However, the pardon power has its limits. For example, we stated in *Grossgold v. Supreme Court of Illinois*, 557 F.2d 122, 126 (7th Cir. 1977), that "a presidential pardon does not relieve an attorney from discipline," while the

Third Circuit held in *United States v. Noonan*, 906 F.2d 952, 960 (3d Cir. 1990), that a pardon does not warrant expunction of all court records relating to an individual's conviction. More recently, the D.C. Circuit determined that a pardon does not entitle an individual who has been indicted, but not convicted, to attorneys' fees incurred as a result of an investigation conducted by independent counsel. *See In re North*, 62 F.3d 1434, 1438 (D.C. Cir. 1994).

Similarly, the case law does not suggest that a pardon prevents an individual from having to deal with the consequences of his *own* actions taken in response to his conviction. Unlike the forfeiture of Yasak's pension benefits, the provision of the refund was not a punishment meted out by the state on account of Yasak's conviction, but resulted instead from a conscious decision on Yasak's part to regain control of his money. The consequence of this decision is that Yasak triggered the application of 40 ILL. COMP. STAT. 5/5-163(c),[3] and thus voluntarily relinquished his property interest in his pension. *See Board of Regents v.*

---

[3] Yasak concedes that "certain state laws may be enforced if their operation is not dependent on the fact of a conviction." According to 40 ILL. COMP. STAT. 5/5-163(c), "[a] policeman who withdraws the amount credited to him surrenders and forfeits all rights to any annuity or other benefit from the fund, for himself and for any other person or persons who might otherwise have benefitted through him." Although provisions for reinstatement of benefits following forfeiture are discussed in 40 ILL. COMP. STAT. 5/5-164, this option applies to police officers who re-enter the police force, and Yasak has passed the age limit for re-entry. Unlike 40 ILL. COMP. STAT. 5/5-227 (which precludes payment of pension benefits to police officers convicted of certain felonies), sections 5/5-163(c) and 5/5-164 come into play here not because Yasak was convicted, but rather because he chose to withdraw the money that was credited to him. Because the statutes' relevance is not dependent on Yasak's conviction, these rules may be enforced to Yasak's detriment.

*Roth*, 408 U.S. 564, 577 (1972) (explaining that property interests are created and defined by sources other than the Constitution, such as state law). A consequence of this nature falls squarely within the "otherwise" umbrella described above in *Knote*, so Yasak's pardon does not entitle him to relief.[4] Because Yasak has no property interest in his pension, and a cognizable property interest is a prerequisite for Yasak's success on his due process claims, his claims necessarily fail. *See Brown v. City of Lake Geneva*, 919 F.2d 1299, 1301 (7th Cir. 1990) ("It is well established that the threshold requirement for any successful due process claim is the deprivation of a liberty or property interest.").[5]

We note that rather than claiming his refund, Yasak could have waited out the pardon process and thus retained his property interest. No law, as far as we can tell, required Yasak to seek his refund within a certain time frame. *Cf. Shields v. Judges Ret. Sys. of Ill.*, 791 N.E.2d 516, 517 (Ill. 2003) (noting that a state court judge who was denied pension benefits in 1992 following numerous felony convictions did not seek a refund until 1999 because he wanted to

---

[4] *Ex Parte Garland*, 71 U.S. 333 (1866), does not compel a contrary result. In that case, an act of Congress was in direct conflict with the terms of a presidential pardon, and the Supreme Court determined (among other things) that the pardon took precedence. *Id.* at 380-81. Unlike Yasak, beyond committing the offense for which he was pardoned, the *Garland* petitioner played no role in creating the unfortunate circumstances in which he found himself.

[5] Yasak asks us to expand the list of "basic civil rights" discussed in *Bjerkan v. United States*, 529 F.2d 125, 128 (7th Cir. 1975) (namely, the right to serve on juries, the right to vote, and the right to work in certain professions) to include the right to "restoration of vested annuity benefits created by state law." As Yasak has not provided a compelling reason for doing so, we decline the invitation.

see how the appeals process and pardon process turned out). After Yasak was pardoned, if the Board still had Yasak's pension contributions and was simply refusing to pay his benefits, the denial of benefits could be deemed punitive and reinstatement might be warranted. *See Osborn v. United States*, 91 U.S. 474, 477 (1875) (holding that a pardoned individual was entitled to recover from various court officers the proceeds from his previously forfeited property).

Alternatively, if the Board had sent Yasak a refund check in the absence of an application and over Yasak's objections, an argument could be made that Yasak was punished by the provision of the refund, and the Board's refusal to take notice of the pardon constitutes further punishment. Reinstatement might well be in order under such circumstances.

Unfortunately for Yasak, he chose to get his money sooner rather than later, and as a result, relinquished his property interest in his pension benefits at his own election. Because Yasak's own actions (as opposed to the state's reaction to his conviction) caused his current dilemma, the Board is not required to "make amends for the past" by way of reinstatement of benefits. *Knote*, 95 U.S. at 153. We therefore see no error in the district court's analysis of Yasak's claim.

## III.  CONCLUSION

Although we recognize that Yasak made a difficult choice, we are unable to alter the consequences of his decision. Accordingly, the district court's decision is AFFIRMED.

RIPPLE, *Circuit Judge*, dissenting.  After twenty-eight years of service, Mr. Yasak resigned his appointment as a Chicago police officer. He was later convicted, in federal court, of having committed perjury before a grand jury. This crime constitutes a felony.[1] After this federal conviction, Mr. Yasak was informed that he would be denied pension benefits because his felony conviction, arising out of his service as a police officer, rendered him ineligible for benefits.[2] He therefore withdrew his personal funds.

The President of the United States later pardoned Mr. Yasak. Mr. Yasak, acknowledging his obligation to make all necessary payments, then asked that the Retirement Board reinstate his pension benefits. Despite the action of the President, the Board nevertheless informed Mr. Yasak that it would not reinstate his benefits. We therefore must decide whether the action of the President now obligates the Board to allow Mr. Yasak to re-invest his funds into the pension and to resume his pension eligibility.

The majority concludes that, despite the presidential pardon, the Retirement Board, although admittedly refusing Mr. Yasak a pension because of his now-pardoned felony conviction, acted lawfully when it refused to permit him to resume his participation in the fund. In its view, Mr. Yasak irrevocably lost any right to participate when, after being denied a pension because of the felony conviction, he withdrew his funds from the plan. In my view, this conclusion, and the reasoning expressed in support of it, fails to take into account the nature of the President's constitution-

---

[1]  *See* 18 U.S.C. § 1623; *see also United States v. Yasak*, No. 88 CR 217, 1988 WL 79641 (N.D. Ill. July 25, 1988) (denying in part motion to dismiss indictment).

[2]  *See* 40 Ill. Comp. Stat. 5/5-227.

ally based Pardon Power[3] as well as the practical realities of the situation before us. Mr. Yasak only withdrew his contributions because the Board had informed him that his felony conviction precluded his receipt of a pension. The withdrawal was therefore a direct consequence of his felony conviction ineligibility. To deny Mr. Yasak the ability to re-enter the fund on the basis of his earlier withdrawal effectively permits the City to exact a penalty for the offense despite the decision of the President in the exercise of his constitutional prerogative.

In *Ex Parte Garland*, 71 U.S. 333 (1866), the Supreme Court set forth the basic nature of a presidential pardon:

> The power thus conferred is unlimited, with the exception stated. It extends to every offence known to the law, and may be exercised at any time after its commission, either before legal proceedings are taken, or during their pendency, or after conviction and judgment. This power of the President is not subject to legislative control. Congress can neither limit the effect of his pardon, nor exclude from its exercise any class of offenders. The benign prerogative of mercy reposed in him cannot be fettered by any legislative restrictions.

> Such being the case, the inquiry arises as to the effect and operation of a pardon, and on this point all the authorities concur. A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender

---

[3] *See* U.S. Const. art. II, § 2, cl. 1 ("[The President] shall have Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment.").

is as innocent as if he had never committed the offence. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.

There is only this limitation to its operation: it does not restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment.

*Id.* at 380-81 (footnote omitted).[4]

Despite this broad description of the purpose and effect of the Pardon Power, the case law of the Supreme Court recognizes that there are limitations to the scope and effect of a pardon.[5] As *Garland* noted, it does not operate to re-

---

[4] The Pardon Power, when exercised by the President, is binding on the states as well as the federal government. *See Bjerkan v. United States*, 529 F.2d 125, 127 (7th Cir. 1975).

[5] Our case law has recognized as well that the broad language of *Ex Parte Garland*, 71 U.S. 333 (1866), is subject to qualification. Indeed, in *Bjerkan v. United States*, 529 F.2d 125 (7th Cir. 1975), we said:

A pardon does not "blot out guilt" nor does it restore the offender to a state of innocence in the eye of the law as was suggested in *Ex Parte Garland*, 71 U.S. (4 Wall.) 333, 380, 18 L.Ed. 366 (1866). *See Burdick v. United States*, 236 U.S. 79, 91, 35 S.Ct. 267, 59 L.Ed. 476 (1915) (suggesting that, far from blotting out guilt, the acceptance of a pardon may constitute a confession of guilt). We accept the view of the effect of a pardon propounded by Professor Williston in *Does A Pardon Blot Out Guilt?*

(continued...)

store offices forfeited or property interests vested in others as a result of the underlying conviction. *See id.* at 381. Nor must the fact of the underlying conviction, and the conduct that precipitated it, be ignored by a court charged with the responsibility of assessing the pardoned individual's potential for rehabilitation in a later proceeding. *See Carlesi v. New York*, 233 U.S. 51, 57 (1914); *cf. Grossgold v. Supreme Court of Illinois*, 557 F.2d 122, 125-26 (7th Cir. 1977) (holding that pardon did not relieve offender of moral turpitude inherent in the factual predicates of his conviction and therefore did not relieve him of professional disciplinary action based on those facts).

---

[5] (...continued)

28 Harv.L.Rev. 647, 653 (1915):

> The true line of distinction seems to be this: The pardon removes all legal punishment for the offense. Therefore if the mere conviction involves certain disqualifications which would not follow from the commission of the crime without conviction, the pardon removes such disqualifications. On the other hand, if character is a necessary qualification and the commission of a crime would disqualify even though there had been no criminal prosecution for the crime, the fact that the criminal has been convicted and pardoned does not make him any more eligible.

Thus, the fact of conviction after a pardon cannot be taken into account in subsequent proceedings. However, the fact of the commission of the crime may be considered. Therefore, although the effects of the commission of the offense linger after a pardon, the effects of the conviction are all but wiped out.

*Id.* at 128 n.2; *see also Grossgold v. Supreme Court of Illinois*, 557 F.2d 122, 125 (7th Cir. 1977). I examine further these limitations in the text.

The Supreme Court has noted that a practical approach must be taken in setting the contours of the Pardon Power. The purpose of the pardon is to release the offender "from the consequences of his offence, so far as such release is practicable." *Knote v. United States*, 95 U.S. 149, 153 (1877). It does not, therefore, give him a right to compensation for an imprisonment or other deprivation that he has suffered. *Id.* at 154. Nor, as noted above, does it give him a right to recoup any property rights that have "vested in others directly by the execution of the judgment for the offence, or which have been acquired by others whilst that judgment was in force." *Id.* Similarly, if, as a result of the conviction, funds have been paid to the Government, title to those funds is vested in the Government and can only be returned to the offender through a legislative act. *Id.* In short, settled expectations, recognized by law, are not disturbed by the pardon.

We must take the same approach as the Supreme Court in establishing the contours of the Pardon Power. As I have noted earlier, the Supreme Court has stressed, explicitly and implicitly, the need to focus on the practical effect of the Chief Executive's action. Taking the same approach, we must acknowledge at the outset that central to our inquiry must be the reality that the denial of a pension to the plaintiff was exacted as punishment for the federal conviction for which he now has received a pardon from the President. Notably, an amnesty issued by the President is intended to place the recipient "beyond the reach of punishment of any kind" for the offense of conviction. *Ex Parte Garland*, 71 U.S. at 381. The recipient is not to be excluded "by reason of that offence, from continuing in the enjoyment of a previously acquired right." *Id.* To do so would be to "enforce a punishment for that offence notwithstanding the pardon." *Id.* If the Board were allowed to deprive Mr. Yasak of the pension because he had committed an offense for which he is now pardoned, "the pardon may be avoided, and

that accomplished indirectly which cannot be reached by direct legislation." *Id.*

My colleagues nevertheless take the view that we are not confronted with a penalty exacted on account of the conviction, but rather with the consequence of the free act of Mr. Yasak in withdrawing his money from the pension plan. I respectfully submit that this approach is the exultation of form over substance. Keeping in mind the Supreme Court's admonition that we analyze the contours of the Pardon Power with an eye to the practicalities of the situation, we must acknowledge the stark reality that Mr. Yasak withdrew his money from the pension fund only after he was informed that he would receive no pension because of the conviction. In short, the City had exacted a penalty because he was a convicted felon. Now that this status has been removed from him by order of the President of the United States, I can see no basis for permitting the City to render ineffective the presidential order by continuing to exact a penalty for the commission of that crime.

The cases, attuned to the practicalities of the situation, make clear that there are situations in which significant countervailing considerations must have, necessarily, the secondary effect of limiting the force of the presidential pardon. Prominent among these situations is the one in which the expectations of third parties would be unsettled because legal title to property has vested in them. *See Knote*, 95 U.S. at 154. By contrast, we are not faced here with any such expectation. Indeed, because Mr. Yasak has acknowledged his obligation to make payments necessary to make his account current, the rights of no third party would be significantly affected by allowing him to redeposit his funds in the pension plan.

The Retirement Board has raised no legitimate reason why it ought not acknowledge and give effect to the order of

the President. Under these circumstances, we ought to refrain from curtailing gratuitously the constitutional Pardon Power of the Chief Executive.

A true Copy:

       Teste:

 

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*