# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-2573

JUDD B. HIRSCHBERG,

*Petitioner*,

v.

COMMODITY FUTURES
TRADING COMMISSION,

*Respondent.*

———————

Petition for Review of the Final Order of the
Commodity Futures Trading Commission,
Docket No. CRAA 02-03.

———————

ARGUED FEBRUARY 11, 2005—DECIDED JULY 5, 2005

———————

Before BAUER, POSNER, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.*   Judd Hirschberg's floor broker
registration was revoked after he was convicted of mail
fraud in 1991. In 2000, he received a presidential pardon for
that conviction, but the Commodity Futures Trading
Commission ("CFTC") nevertheless denied his post-pardon
application for floor broker registration. Because a pardon
does not eliminate the legal determination that Hirschberg
was guilty of the crime of which he was convicted, and the
crime was properly considered in the CFTC's application

process, we affirm the decision of the CFTC and deny Hirschberg's petition for review.


## I. History

Hirschberg became a registered floor broker in 1985. According to the Commodities Exchange Act, 1 U.S.C. § 1a(16), floor brokers buy and sell futures contracts for others on an exchange floor such as that of the Chicago Mercantile Exchange ("CME"), where Hirschberg worked. Floor brokers commonly act as fiduciaries in conducting transactions. They are required to register with the CFTC, which has delegated most of the registration process to the National Futures Association ("NFA"). *See* 7 U.S.C. §§ 6(e), 21(o). The CFTC also has the power to revoke registration from floor brokers who violate CFTC or NFA rules.

The CFTC initiated revocation proceedings against Hirschberg in 1991, alleging disqualification under Sections 8(a)(2) (conviction of a felony involving fraud) and 8(a)(3) (for good cause) of the Commodities Exchange Act. 7 U.S.C. §§ 12a(2)(D), 12a(3)(M). Hirschberg had indeed been convicted in federal court on four felony counts of mail fraud and two felony counts of tampering with vehicle identification numbers. These 1991 convictions stemmed from an insurance fraud scheme that took place in 1984, when Hirschberg reported that his car had been stolen and then collected $43,300 from his insurance company. Several years later, evidence was discovered suggesting that Hirschberg had voluntarily transferred the car to a friend and altered its vehicle identification number to hide the crime. On appeal, this court found insufficient evidence to uphold the conviction for identification number tampering, but affirmed the conviction for mail fraud. Hirschberg was ordered to serve three years of probation and pay $40,000 in restitution.

The CFTC proceedings ultimately led to revocation of Hirschberg's registration in 1994. The Administrative Law Judge ("ALJ") presiding over the hearing did not find sufficient evidence of mitigation or rehabilitation to justify Hirschberg keeping his registration. Weighing against Hirschberg was evidence of disciplinary proceedings brought against him by the CME—several years after the 1984 insurance fraud, Hirschberg was disciplined for engaging in pre-arranged trading in violation of CME rules. Hirschberg has made his living since 1994 (earning substantially less than he did as a floor broker) by consulting for trading houses and training young traders.

In 1998, Hirschberg applied for a presidential pardon of his mail fraud conviction, which was granted by President Clinton in 2000. Pardon in hand, he applied to the NFA for registration as a floor broker in July 2001. After a designated subcommittee conducted a hearing, the NFA denied Hirschberg's application. The subcommittee found that Hirschberg's conviction and subsequent revocation of registration subjected him to a Section 8a(2)(A) disqualification based on his prior revocation. *See* 7 U.S.C. § 12a(2)(A). Although this merely created a rebuttable presumption that he was unfit for registration, the subcommittee did not find that Hirschberg presented enough mitigating evidence to rebut the presumption of unfitness. The CFTC affirmed the denial of registration in 2004. Hirschberg appeals the denial on the grounds that the CFTC's decision violates the Pardon Clause, due process, and his statutory rights under the Commodities Exchange Act.

## II.  Analysis

We review the CFTC's decision by addressing each of Hirschberg's arguments in turn. To summarize: the legal effect of a presidential pardon is to preclude further pun-

ishment for the crime, but not to wipe out the fact of conviction. The CFTC did not violate the pardon clause by considering the conduct underlying Hirschberg's conviction in determining whether he was qualified to do business as a floor trader, because its decision was grounded in protection of the public rather than in punishing Hirschberg as a convicted felon. Hirschberg's due process and statutory rights arguments also do not justify reversal of the decision to deny his application for registration.

### A. Pardon Clause

The CFTC denied Hirschberg's 2001 application for registration based on Section 8a(2)(A) of the Commodities Exchange Act, which is codified at 7 U.S.C. § 12a(2)(A) and allows the CFTC to revoke or deny registration of any person "if a prior registration of such person in any capacity has been suspended . . . or has been revoked[.]" The revocation underlying this statutory disqualification was, of course, based on Hirschberg's 1991 conviction for mail fraud. Hirschberg asserts that, because he received a full and unconditional pardon for that conviction, the CFTC's denial unconstitutionally interferes with the presidential pardon power. This is a legal question which we review *de novo. See LaCrosse v. CFTC*, 137 F.3d 925, 929 (7th Cir. 1998) (reviewing constitutional double jeopardy issue *de novo*).

The Constitution gives the President "Power to grant Reprieves and Pardons for Offences against the United States, except in cases of impeachment." U.S. Const. art. II § 2. Hirschberg relies on a Civil War era case to support his position that a presidential pardon shields him from suffering any further direct or indirect consequences of his conviction. In *Ex Parte Garland*, the Supreme Court held that depriving an attorney of the right to practice law based on a pardoned conviction for treason (stemming from

service in the Confederate legislature) violated the pardon clause. 71 U.S. 333, 380-81 (1866). "A pardon reaches both the punishment prescribed for the offence and the guilt of the offender[,]" the Court said. *Id.* at 380. "[I]t releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence." *Id.*

But modern caselaw emphasizes (and indeed Hirschberg admits) that this historical language was dicta and is inconsistent with current law. *See In re North*, 62 F.3d 1434, 1437 (D.C. Cir. 1994). A pardon in no way reverses the legal conclusion of the courts; it "does not blot out guilt or expunge a judgment of conviction." *North*, 62 F.3d at 1437; *see also Nixon v. United States*, 506 U.S. 224, 232 (1993) ("a pardon is in no sense an overturning of a judgment of conviction by some other tribunal"); *Burdick v. United States*, 236 U.S. 79, 94 (1915) (a pardon "carries an imputation of guilt"). The effect of a pardon is not to prohibit all *consequences* of a pardoned conviction, but rather to preclude future *punishment* for the conviction. *See Nixon*, 506 U.S. at 232; *Bjerkan v. United States*, 529 F.2d 125, 127-28 (7th Cir. 1975). The question we must answer, then, is whether the CFTC's denial of Hirschberg's registration is impermissible punitive action or simply a consequence of the conduct underlying the conviction that the pardon could not erase.

The answer turns on whether the conduct for which Hirschberg was convicted has any bearing on his ability to work as a floor broker. Government licensing agencies may consider conduct underlying a pardoned conviction—without improperly "punishing" the pardoned individual—so long as that conduct is relevant to an individual's qualifications for the licensed position. *Grossgold v. Supreme Court of Illinois*, 557 F.2d 122, 125-26 (7th Cir. 1977); *Bjerkan*, 529 F.2d at 128 n.2. In *Grossgold*, for example, an attorney was suspended from practice for three years based on a

conviction for mail fraud. 557 F.2d at 123. Fraudulent activity was grounds for discipline under Illinois law—honesty and integrity are deemed important traits in the practice of law—and a conviction for a crime involving fraud was conclusive evidence of fraudulent activity. *In re Grossgold*, 317 N.E. 2d 45, 46-47 (Ill. 1974). A presidential pardon did not invalidate the suspension, because it "did not wipe out the moral turpitude inherent in the factual predicate supporting plaintiff's mail fraud conviction." *Grossgold*, 557 F.2d at 125. In cases where governmental action has been held to violate the pardon clause, on the other hand, the pardoned individual is stripped of his rights based not on the conduct underlying the conviction, but on the fact of conviction alone. *See Bjerkan*, 529 F.2d at 128 (holding that a state's deprivation of a pardoned individual's civil rights based on fact of a conviction alone violated pardon clause).

The statutory disqualification scheme under which Hirschberg's registration was revoked in 1994 and then denied in 2004 was enacted with the Futures Trading Act of 1982, P.L. 97-444 § 224. It was designed to "streamline and simplify the [former] registration procedures to enable the [CFTC] to register fit persons more expeditiously and to remove unfit persons from the industry more promptly." H.R. Rep. No. 97-565, pt. 1, at 50 (1982). Given the fiduciary nature of most of the transactions engaged in by a floor broker, there can be no serious doubt that honesty and integrity are legitimate qualifications for the job. Engaging in fraudulent behavior (such as an insurance scam) demonstrates a serious lack of these qualities. In revoking Hirschberg's original registration, the CFTC was allowed to use the conviction as an authoritative source on whether the fraudulent conduct occurred, theoretically improving efficiency and "freeing resources for the performance of its other important regulatory and oversight functions." *Id.* That revocation served as presumptive evidence that

Hirschberg was unfit to be a floor broker when he reapplied for registration, again eliminating the need for the CFTC to spend time and money determining whether Hirschberg had engaged in fraudulent conduct. Convictions for fraud play into the CFTC's registration process because the conduct underlying such convictions *is* relevant to the business of floor trading, not because the CFTC is interested in further punishing convicted felons. This enables the CFTC to protect the public from unfit floor brokers and to register fit applicants more efficiently.

Further evidence of the CFTC's non-punitive purpose in denying Hirschberg's application is the fact that the conduct underlying Hirschberg's mail fraud conviction would be cause for denial even if he had not been criminally convicted for it. Fraud can be grounds for statutory disqualification when it is the subject of an injunction or of a civil court or administrative ruling in a case to which a government agency is a party. 7 U.S.C. §§ 12a(2)(c), 12a(3)(K). The CFTC may also revoke registration "for good cause" under 7 U.S.C. § 12a(3)(M), which includes any conduct demonstrating moral turpitude, lack of honesty, or financial irresponsibility, with no prior formal proceedings. *See* 17 C.F.R. pt. 3 app. A. Hirschberg's registration in 1991 was not revoked because he was a convict per se, but because he engaged in fraudulent conduct that demonstrated the lack of qualities necessary to be a floor broker. He would have met with the same consequences (the 1994 revocation and the 2004 denial of registration) had the fraudulent conduct been proven independent of a criminal conviction.

One further element convinces us that the CFTC was not impermissibly punishing Hirschberg for his pardoned conviction: Hirschberg was given a chance to rebut the presumption that he was unfit to be a floor broker. Hirschberg would have obtained registration in 2004 if he had been able to demonstrate that he would not pose a significant risk to the public. Unfortunately, Hirschberg did not offer

enough evidence in mitigation or of rehabilitation to over-come the presumption that he was unfit for floor broker registration—to the contrary, the evidence of CME disciplinary action bolstered the presumption. The fact that the CFTC's procedural scheme provides an applicant with the opportunity to rebut a presumption of unfitness shows that the relevant consideration is not the conviction itself, but the conduct underlying it.

Given the fiduciary nature of transactions made by a floor trader, the CFTC's reasons for denying Hirschberg's application were both prudent and within the law of presidential pardon. The decision was based on concern for protecting the public in an efficient manner rather than on the desire to punish Hirschberg for his criminal conviction. The denial of floor broker registration based on fraudulent conduct underlying a pardoned criminal conviction does not constitute a violation of the pardon clause.

*B.  Due Process*

Hirschberg's second argument is that the CFTC has violated his due process rights by shifting onto him the burden of proving that his registration will not pose a substantial risk to the public. When a constitutional right is at issue, due process requires that the government bear the burden of proof. *See Speiser v. Randall*, 357 U.S. 513, 525-26 (1958). Hirschberg asserts that his constitutional right to the full benefit of his pardon is at issue, so the burden should have remained with the government to prove that his registration as a floor broker would have endangered the public.

This argument falls with the first because it is based on the false premise that a pardon wipes out guilt. As discussed above, a pardon does no such thing. The CFTC appropriately considered the conviction as evidence of Hirschberg's inability to work as an ethical floor broker.

Hirschberg was not denied the full benefit of his pardon by the CFTC because it did not take punitive action against him based on his conviction. Thus, no constitutional right was at issue and the burden of proof was permissibly shifted to Hirschberg.

### C.  Statutory Time Limit

The CFTC's denial of Hirschberg's registration was based on Section 8a(2)(A) of the Commodities Exchange Act, which states: "[T]he Commission is authorized . . . to refuse to register . . . any person and with such a hearing as may be appropriate to revoke the registration of any person—if a prior registration of such person in any capacity has been suspended . . . or has been revoked[.]" 7 U.S.C. § 12a. As the NFA subcommittee noted in its decision (affirmed in whole by the CFTC), the plain language of this provision does not contain a time limit for underlying suspensions or revocations. Hirschberg argues that the ten-year time limit from Section 8a(2)(D),[1] the provision on which his 1994 revocation was based, should be incorporated into Section 8a(2)(A). Because he was convicted in 1991, more than ten years prior to filing his current application, this incorporated time limit would make Section 8a(2)(A) inapplicable to Hirschberg. The question of whether a statutory provision has an implied limitations period is one that is "a regular part of the court's jurisprudential diet" rather than an area of special agency expertise, so our review is *de novo*. *See Elliott v. CFTC*, 202 F.3d 926, 932 (7th Cir. 2000); *see*

---

[1]  This provision, codified at 7 U.S.C. § 12a(2)(D), allows the CFTC to revoke or deny registration to a person who "has been convicted *within ten years* preceding the filing of the application for registration or at any time thereafter of any felony that . . . (iv) involves the violation of section . . . 1341 . . . of Title 18 [mail fraud]." (emphasis added).

*also, e.g.*, *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1389 (7th Cir. 1990) (inferring limitations period in actions under § 10b of the Securities Exchange Act from federal law); *Norris v. Wirtz*, 818 F.2d 1329, 1333 (7th Cir. 1987) (same, using state law); *United Mine Workers of Am. v. Kleppe*, 561 F.2d 1258, 1260-61 (7th Cir. 1977) (inferring 45-day limitations period for filing a claim under the Federal Mine Coal Safety Act).

There are some statutes in which Congress has been silent as to a limitations period, but such a period must be implied under the law of this circuit. As we said in *Kleppe*, "courts generally refuse to infer that Congress's silence indicates an intent that the federal claim not be subject to any limitations period for this would be utterly repugnant to the genius of our laws." 561 F.2d at 1260-61 (quotation marks and citation omitted). But that case, like the others Hirschberg cites in support of his position, deals with a limitations period for the commencement of a lawsuit or a closely analogous administrative proceeding. *Id.* (inferring a time limitation for filing a claim for compensation under the Federal Coal Mine Health and Safety Act); *e.g.*, *Short*, 908 F.2d at 1389 (inferring limitations period in actions under § 10b of the Securities Exchange Act from federal law); *Cange v. Stotler & Co.*, 826 F.2d 581, 585 (7th Cir. 1987) (inferring limitations period in actions under the Commodity Exchange Act from state securities law).

The statutory disqualification that led to Hirschberg's application being denied, however, is not a cause of action. We reject Hirschberg's assertion that this distinction is immaterial. Limitations periods are favored in connection with lawsuits to encourage prompt resolution of claims and to prevent a party from being prosecuted or sued after witnesses have become incapacitated due to faded memory or death. *See*, *e.g.*, *Campbell v. Haverhill*, 155 U.S. 610, 617 (1895); *Baker v. F & F Inv.*, 420 F.2d 1191, 1194-95 (7th

Cir. 1970). Neither these policy reasons nor the tradition of inferring a time limitation are present in the context of disciplinary actions.

Looking at Section 8a as a whole reinforces the notion that a time limitation should not be inferred in Section 8a(2)(A). While the plain language of that provision contains no time limit, some of the other twenty-two subsections laying out grounds for disqualification in Sections 8a(2) and 8a(3) do. This suggests a conscious choice by Congress to require that a person who has lost his registration once must affirmatively show rehabilitation before again obtaining registration, regardless of when the conduct underlying the revocation occurred. We also note that the CFTC could have denied Hirschberg's application under Section 8a(3)(D), which provides that the CFTC may refuse to register a person who "was convicted of a felony of the type specified in paragraph (2)(D) . . . more than ten years preceding the filing of the application" after a hearing. 7 U.S.C. § 12a(3)(D). For all of these reasons, we decline to infer a time limitation in Section 8a(2)(A).

## III. Conclusion

The CFTC violated neither the pardon clause nor principles of due process, because it did not seek to punish Hirschberg for his pardoned federal conviction. The CFTC permissibly and rationally considered the conduct underlying Hirschberg's conviction in ascertaining whether he would be fit to act as a floor broker. Also, we are not compelled to infer a time limitation on the statutory disqualification relied upon by the CFTC. We therefore AFFIRM the decision of the CFTC and deny Hirschberg's petition.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*